Marx v. Bell, Moore & Co.

48 497
101 633

## MARX vs. BELL, MOORE & CO.

[ACTION FOR MONEY LOANED, &C.]

1. *Original undertaking; what is, and not within statute of frauds.*—Where money is advanced to A, on the request of B, if the credit is wholly and

exclusively given to B, his liability is an original, and not a collateral liability, and so, not within the statute of frauds.

2. *Same; what evidence inadmissible to prove nature of undertaking.*—Where money is advanced to A, on the request of B, if the party by whom the money is advanced directs his clerk, in making the entry on his books against A, to enter opposite the name of A, "B responsible," and B, in an action against him for the money, pleads the statute of frauds, the plaintiff can not introduce such direction and entry as evidence in his own behalf.

3. *Charge to jury; what erroneous.*—A charge that requires the court to determine what the evidence proves, should be refused. Admitting the evidence to be true, it is the province of the jury, and not of the court, to find or determine what it proves.

4. *Impeachment; what can not be made matter of.*—A witness can not be questioned, on cross-examination, about a matter not relevant to the issue, for the purpose of laying a ground to impeach him.

APPEAL from the Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

The facts are sufficiently stated in the opinion.

D. C. ANDERSON, for appellant.

WM. G. JONES, *contra.*

[No briefs reached Reporter.]

PECK, C. J.—This action was brought by the appellees, Bell, Moore & Co., against the appellant, Isaac Marx, to recover one thousand dollars, advanced in fact to appellant's brother, now deceased, Henry Marx, on the written order of said deceased, but by the appellees alleged to have been advanced on the request of defendant, and solely and exclusively on his credit, and that he, and not Henry Marx, was the real debtor. This was denied by the defendant, who insisted that the money was advanced to his said brother on his own credit, and that, at most, he was the mere guarantor or surety of his said brother, and that his undertaking was a "special promise to answer for the debt, default, or miscarriage of another;" and there being no note, or memorandum of the agreement in writing subscribed by him, &c., he was entitled to the benefits of the statute of frauds.

Marx v. Bell, Moore & Co.

The complaint consists of the money counts, to which the defendant pleaded *non-assumpsit*, and the statute of frauds.

On the trial, the said Bell, the clerk of the plaintiffs, Edward W. Finch, and one A. J. McCants, were examined on behalf of plaintiffs, and defendant and David Ferguson, the clerk of Henry Marx, on behalf of defendant. Other witnesses, not named, were examined by defendant, whose evidence tended to show that defendant was sick and confined to his house on the 2d, 3d and 4th days of November, 1870, and that he was not on the boat on either of those days, as testified to by said Finch. There was a conflict in the evidence, on this point, between the plaintiff's witnesses and the defendant and his witnesses. The evidence of defendant's witnesses, as to this matter, is not set out, or otherwise stated, in the bill of exceptions. All the other evidence is set out at length.

1. The important question in the court below was, whether the money was advanced by the plaintiffs wholly and exclusively upon the credit of the defendant; in other words, whether the evidence proved that he, and not his brother, was the real debtor. If the credit was wholly and exclusively given to the defendant, on the faith of the message sent by him to the plaintiff Bell by the said witness, and clerk of plaintiffs, Finch, then the case was not within the statute of frauds; then his liability was an original, and not a collateral liability. The very words of the statute necessarily mean this. They are, "that any special promise to answer for the debt, default, or miscarriage of another, is void, unless such special promise, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the party to be charged therewith, or by some other person, by him thereunto lawfully authorized in writing."—Rev. Code, § 1862. Of necessity, there must be some person to answer for some other person, primarily liable, either wholly or in part; otherwise, the promise will be an original, and not a collateral promise, and so, not embraced within the statute;

and thus it was decided by this court, forty years ago, in the case of *Rhodes v. Leeds*, (3 S. & P. 212.) It is there said, that "the uniform, and obviously correct decisions under this statute," (the statute of frauds,) "have been, that if credit is given to A, a promise by B to pay the debt, must be in writing, to be obligatory; but if the credit, in the first instance, is given to B, although the consideration passes to A, it is an original undertaking by B, and he is bound to perform it, although there is no writing."—See, also, *Faries v. Lodanc*, 10 Ala. 50; *Scott v. Myatt & Moore*, 24 Ala. 489; *Sanford v. Howard*, 29 Ala. 684; *Boykin v. McRae*, 37 Ala. 577; *Cahill v. Bigelow*, 18 Pick. 369; *Chase v. Day*, 17 J. R. 114, and note. By most of these cases it is said, if any credit is given to the party deriving the benefit, then the statute of frauds applies, and the promise must be in writing, &c. The changes in the statute since the case of *Rhodes v. Leeds, (supra,)* have added to and increased its requirements, but these changes and additions in no wise affect the correctness of this construction of it.

The said question seems to have been very fairly submitted to the jury on the evidence; and we are unable to discover any errors in either of the charges given; both the charges, the one given by the court on its own motion, and the other on the written request of the plaintiffs, distinctly instruct the jury, that if they found from the evidence that the money was advanced or loaned by the plaintiffs solely and exclusively on the credit of the defendant, Isaac Marx, then their verdict should be for the plaintiffs. It would seem the defendant ought not to complain of this.

Under these charges, the jury have answered this question in favor of the plaintiffs. They have said, by their verdict, that the money was advanced wholly and exclusively on the credit of the defendant.

If in this the jury found against the weight of the evidence, the defendant's only remedy was a motion for a new trial. If this had been made and overruled, he must have submitted to the judgment of his peers; it would have been the end of the law. It is beyond the power of this court,

in such a case, to afford relief. I feel constrained to say, however, that after the most critical examination of the evidence, my mind is irresistibly drawn to the conclusion, that the evidence fails to prove that the credit was wholly and exclusively given to the defendant, and that the plaintiffs did, in truth and in fact, in a greater or less degree, look to the said Henry Marx as responsible for the repayment of the money received by him.

Let us look at the evidence of the plaintiff, and witness, Bell. He certainly knows as much about this matter as any one, and, being interested, he may be supposed to have made as good a case for himself and copartners as the truth would permit; but I have no reason to believe, and do not believe, he has done more; and, treating his evidence as true, let us see to what conclusion a fair and impartial construction of it will conduct us. He says, that in the month of October, before the advance of the money was made, Henry Marx and himself were daily passengers on the steamer plying, morning and evening, from Mobile to the eastern shore of the bay; that during such trips said Henry Marx asked him whether his house would let him have $800 or $1,000; that he replied they would do so upon two conditions: first, that the loan should be fully secured, and secondly, that the transaction should be the means of securing a profit on business to be derived by means of the loan; that he knew Henry Marx was engaged in business at Demopolis, and that it was usual for merchants at that place to advance money and goods to planters, taking a lien on their crops, and that such merchants usually shipped to Mobile considerable quantities of cotton during the business season, and that he supposed Henry Marx could *secure the loan*, and also make the transaction profitable to them, that is, his house, by sending them cotton to sell, which was their business. He also said, Henry Marx applied again, subsequently, to him, and that he gave him the same answer; that Henry Marx then spoke of cotton liens that he had at Demopolis, and of his ability thereby to comply with the conditions; that Henry Marx then

asked him whether plaintiffs would hold in readiness for him $1,000 about the first of November, and that he, Bell, agreed to do so, subject to the conditions before stated.

He further said, that after this, on the 3d day of November, 1870, David Ferguson, the clerk of Henry Marx, presented an order from Henry Marx on plaintiffs, and that he told him that he had not agreed to let Marx have the money, except upon conditions, of which he had told Henry Marx at the time, and declined to pay the money on the order, but said he would think about the matter, and that he, Ferguson, might call the next day; that Ferguson told him Henry Marx's child was sick, as the reason why he had not come in person.

He further testified, that on the next day, the 4th of November, when Ferguson came in, Mr. Finch, the plaintiffs' book-keeper, whispered to him that Isaac Marx had told him, Finch, to tell him, Bell, if he would let Ferguson have that money, that he, Isaac Marx, would make it all right, and that upon hearing this message from Isaac Marx, *and in consequence thereof*, he let Ferguson have the $1,000. Witness, said Bell, produced the draft of Henry Marx, and the receipt on the back of it, and made it a part of his evidence, marked in the bill of exceptions, exhibit A, which is in the words and figures following, to-wit:

"Hollywood, Nov. 2d, 1870.

"Messrs. Bell & Moore, Mobile:

"Gents—Please let the bearer, Mr. D. Ferguson, have the money that you have promised me, when I was last in the city.               Yours respectfully,

"H. MARX."

(Receipt endorsed on the back):

"Received, Mobile, Nov. 4, '70, from Messrs. Bell, Moore & Co., one thousand dollars for account of Henry Marx.

"(Signed)     D. FERGUSON."

Said Bell further testified, that a few moments afterwards he directed Finch, the book-keeper, to enter "Isaac Marx responsible" opposite the entry against Henry Marx

on their books. He further said, that after the death of Henry Marx, about a month or six weeks, he called on Isaac Marx, and demanded payment of the amount; that said Marx said he was in a great hurry, refused to talk with him about it; said that plaintiffs had no order, receipt, or other paper of his for the debt; that he was not responsible, and asked him why he did not file his claim against the estate. He, Bell, further stated, that at the date of the transaction said Isaac Marx was boarding at Montrose, on the eastern shore.

On cross-examination, he stated, that in the conversation with Isaac Marx, he might have asked him about the condition of the estate of Henry Marx, but could not remember how he introduced the subject. He further said, that plaintiffs expected, as cotton factors, to make profit on the transaction, by getting cotton from Henry Marx to sell; said he was willing to trust to Henry Marx for this profit, if debt was secured; that he had probably had conversations before that with Isaac Marx, about the credit and standing of Henry Marx. Thus ends his evidence, from which we see that the negotiation for the loan (so it is called by the witness and plaintiff, Bell,) of the money to Henry Marx, was between Henry Marx and himself, acting in the premises for his house, the plaintiffs, Bell, Moore & Co. He calls it a loan, and it was to Henry Marx on two conditions. 1. That the loan should be fully secured. 2. That the transaction should be the means of securing a profit to the plaintiffs in their business of commission merchants, by cotton being sent to them to sell by Henry Marx. How the loan was to be secured is not stated; the name of Isaac Marx is not mentioned.

When the order or draft of Henry Marx for the money was presented by Ferguson, his clerk,—(It may be here noted that the order is not for $1,000, or any other sum, but for "the money you have promised me, when I was last in the city,")—Bell, to whom the order was presented, seems to have understood all about it; says nothing about the peculiarity of the order, but tells Ferguson he had not

agreed to let Henry Marx have the money, except on conditions, which, he said, he had told Henry Marx at the time of the negotiation, and he declined to pay the money on the order, but said to Ferguson he would think about the matter, and he might call the next day.

Ferguson accordingly called the next day, and when he came in, then it was that the witness Finch, plaintiffs' bookkeeper, whispered to Bell the message sent to him by Isaac Marx, to-wit, that Isaac Marx had told him, Finch, to tell Bell that if he would let Ferguson have that money, that he, Isaac Marx, would make it all right.

Thereupon, without saying a word to Ferguson, he gives him a check for the money, one thousand dollars, and afterwards, as he says in a few minutes, but not until Ferguson had left, he directed the book-keeper, Finch, to enter "Isaac Marx responsible" opposite the entry against Henry Marx on their books, the receipt of Ferguson, on the back of the order, having been taken, "received of Messrs. Bell, Moore & Co., one thousand dollars, on account of Henry Marx." Bell no where says the whole and exclusive credit was given to Isaac Marx; all he says as to this matter is, that he let Ferguson have the money *in consequence of the said message of Isaac Marx*, "that if he would let Ferguson have that money, he (Isaac Marx) would make it all right." This might as truly have been said, and with equal propriety, on the hypothesis that Isaac Marx was merely the guarantor or surety of Henry Marx. Any one who loans money on security may, no doubt, truly say the money was loaned in consequence of the security; and this is all that was said by Bell in this case. If the true interpretation of said message is, that he, Isaac Marx, would see that the money was repaid by Henry Marx, or pay it himself, it amounted to a mere guaranty, and not being in writing, &c., as required by the statute, imposed no legal obligation on Isaac Marx.

Now, let us turn this case over, and look at the other side of it; look at it from another stand-point. Suppose Isaac Marx had died, embarrassed or insolvent, instead of

Marx v. Bell, Moore & Co.

Henry Marx, and this action had been brought against Henry Marx, on this evidence, would there have been any reasonable doubt of the plaintiffs' right to recover? To my apprehension there would not. It seems to me, in such case, Henry Marx could, with little hopes of being believed, have insisted that the credit was wholly given to Isaac Marx, and that he was in no wise legally liable to repay the money received by him, and for his own benefit, and not for the benefit of Isaac Marx. But however this may be, the jury have interpreted the evidence differently, and their interpretation of it is conclusive, as the case is now presented. In all probability, the plaintiff Bell did not know of the existence of the statute of frauds, or at least of its requirements, but believed the verbal pledge and promise of Isaac Marx, that he would make it all right, bound him as his brother's guarantor and surety, as by the common law he would have been; and this was, in his error, accepted by him as the first condition upon which he agreed to advance the money to Henry Marx, that the loan should be secured.

2. The charges asked by the defendant were properly refused. They required the court to determine what the evidence proved. This was the peculiar province of the jury. Admitting the truth of the evidence, it was for the jury, and not the court, to say whether it proved that Isaac Marx was the principal debtor, or only a surety or guarantor for his brother Henry Marx; in other words, whether it proved that the money was, or was not, advanced or loaned wholly and exclusively upon the credit of Isaac Marx. Evidence is not facts; it is only a means of proving facts; and what fact or facts the evidence proves must be found by the jury, and not the court. When the facts are found, the court may declare the law on the facts found.

If the charges had been so framed as to have instructed the jury, that if they found from the evidence any credit was given to Henry Marx, their verdict should be for the defendant, then they would have been proper charges, and to refuse them would have been error.

3. So far, I have found no available error in the record. During the progress of the trial, several exceptions were taken by the defendant to the admissibility of evidence offered by the plaintiffs. The first refers to the evidence of the plaintiff Bell. He stated that a few moments after the check for the thousand dollars was given to Ferguson, the clerk of Henry Marx, he directed Finch, the book-keeper, to enter "Isaac Marx responsible" opposite the entry against Henry Marx on their books. The book-keeper said the entry was so made the next morning. The defendant's objection to this evidence was overruled. We think it should have been sustained. It was admitting the declaration and act of one of the plaintiffs, in relation to this matter, in the absence of the defendant, as the person by whom the order was presented, and to whom the check for the money was given, to be used as evidence in their own behalf. If this could be done, by the same rule the book-keeper might have been directed to make the entry, "credit wholly and exclusively given to Isaac Marx," and thus, by their own direction and act, have proved the very matter in dispute. This clearly could not be done. It would be, to permit the plaintiffs to make evidence for themselves.

The second exception refers to, substantially, the same evidence, when offered to be proved by the book-keeper, Finch, which was objected to by defendant, but admitted. This evidence should have been excluded, for the reasons given for excluding the evidence of the witness Bell to the same matter.

The third exception grows out of a question put to the defendant by the plaintiffs, on cross-examination, who was examined as a witness for himself. After denying the conversation with the witness Finch, about letting Ferguson have the money and he would make it all right, he was asked by plaintiffs whether he would have indorsed for his brother, Henry Marx, at the time of said transaction. To which he answered he would not. The plaintiffs then asked him whether, in the month of October, he had not told Mr.

McCants, cotton factor in Mobile, that if he would advance to his brother, he would be responsible for it? Defendant objected to this question, and the evidence sought to be elicited, as irrelevant and incompetent. His objection was overruled, he was required to answer, and he excepted. In answer to this question, he said he had two brothers; that he did not recollect of making such a proposal to Mr. McCants; if he did so, it was probably for his other brother, and not for Henry. The plaintiffs then called said Mc-Cants as a witness, who stated that Isaac Marx, in October, 1870, told him that his brother would probably want some money, and that he would be responsible for any sum he might obtain; that he did not desire the money for himself, but for his brother. Some weeks afterwards, he asked Isaac Marx whether he wanted the money, and he said his brother had been supplied; that he did not mention which of his brothers it was. To this examination and evidence of said McCants, defendant objected; his objection was overruled, and he excepted. The purpose of this evidence was, and, if competent, was competent for no other purpose, but to impeach the defendant's credibility. Was it competent for this purpose?

Mr. Greenleaf says, "the credit of a witness may be impeached, by proof that he has made *statements out of court contrary to what he has testified at the trial. But it is only in such matters as are relevant to the issue.*—1 Greenl. Ev. § 462, and note.

I have had some difficulty in understanding what this author means by the words "*relevant to the issue.*" Do they mean the issue made up between the parties to the case on trial; or may they embrace some side, collateral issue, raised on cross-examination of a witness, for the purpose of impeaching him, as to a matter not relevant to the real issue between the parties? After the best thought and examination I have been able to give the question, my opinion is, that they refer to the former; to the issue in the cause; that a party can not be permitted, on cross-examination of his adversary's witness, to inquire of him what

he may have stated, either in or out of court, as to a matter not relevant to the issue in the cause, or some issue not necessarily arising on the trial, for the purpose of contradicting such witness, and thereby to impeach him.

In *Ortez v. Jewett & Co.*, (23 Ala. 662,) it is decided, that the evidence of a witness on a point not in issue can not be contradicted, nor can the witness be questioned about a matter not relevant to the issue, to lay a ground to impeach him. In *Dozier v. Joice*, (8 Porter, 308,) it is ruled, that a witness can not be examined to any distinct collateral fact, for the purpose of afterwards impeaching his testimony, by contradicting him. But if a witness voluntarily swears falsely in relation to matters not within the issue, he may be impeached, by contradicting him. On this subject, see *Shields v. Cunningham*, 1 Blackf. 86; *United States v. Dickinson*, 2 McL. Rep. 325; *The State v. Patterson*, 2 Iredell's Rep. 346.

If forty witnesses in this case had sworn that defendant told McCants, in October, 1870, that his brother would probably want some money, and that he would be responsible for any sum he might obtain, it would not have made out even a *prima facie* case for the plaintiffs; it would have been worthless evidence to prove the issue between them and the defendant, and therefore irrelevant, and no question for impeachment could be based upon it. For these reasons, the objection to the question put to the defendant by plaintiffs, as to what he had told McCants, should have been sustained, and evidence of McCants to contradict his answer should have been rejected. The court below erred as to both these matters.

For the errors named, the judgment is reversed, and the cause remanded, at appellees' costs.