173 So.2d 94

Erle DANLEY

v.

MARSHALL LUMBER AND MILL COMPANY, Inc.

3 Div. 112.

Supreme Court of Alabama.

March 18, 1965.

552

Hill, Robison & Belser, Montgomery, for appellee.

PER CURIAM.

The Circuit Court of Montgomery County rendered a judgment in favor of appellee and against appellant on Count 1 of the complaint (all other counts being eliminated by amendment), which claims $3,039.19 due from defendant by account on, to-wit, the 31st day of March, 1962, "which sum of money is still due and unpaid." The count comports with the statutory form in § 223(10), Title 7, Code 1940, and is sufficient. Defendant here appeals.

The defendant filed pleas to the complaint: (a) not guilty; (b) Pleas II and

Samuel Kaufman, Montgomery, for appellant.

III setting up the defense that the suit was based on a parol promise to answer for the debt, default or miscarriage of another. Title 20, § 3(3), Code 1940.

■ Assignment of error number 4 asserts that the trial court erred in overruling appellant's motion for a new trial. This is a proper assignment of error, and brings up all questions of law and fact sufficiently set forth as grounds for the motion and argued on appeal. Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358; Mulkin v. McDonough Construction Co. of Georgia, 266 Ala. 281, 95 So.2d 921. Appellant goes further and assigns as error the overruling of the motion for a new trial on specific grounds of the motion.

■■ Appellant states in brief that he relies chiefly on the grounds that the judgment is contrary to the evidence and assignment number 8 which charges that the trial court erred in overruling appellant's motion for a new trial based on ground No. 4 that "the judgment of the court is contrary to the law in the case." Such a ground in a motion for a new trial is insufficient because it is too general to be considered. The errors of law complained of, or in what respect the verdict or judgment is contrary to it, "should be specially pointed out so the court's attention will be directed to them." Atlantic Coast Line R. Co. v. Burkett, 207 Ala. 344, 92 So. 456, and cases there cited. This rule was followed in State v. Boone, 276 Ala. 16, 158 So.2d 658.

We have an erroneous statement in Lyle v. Winston County, 274 Ala. 581, 150 So.2d 706, that a ground in a motion for a new trial that the verdict is contrary to the law is a good ground; and we were mistaken in saying that we could consider such a ground under an assignment of error that the court erred in overruling a motion for a new trial in Mulkin v. McDonough Construction Co. of Ga., 266 Ala. 281, 95 So.2d 921. These statements are not to be followed and are expressly overruled.

■ We proceed now to a consideration of those grounds of motion for a new trial, argued in brief, which relate to the contention that the judgment was contrary to the evidence in the cause.

It appears from the evidence that appellee corporation operated a building material supply house; that the officers or agents of said appellee delivered, or caused to be delivered, to Kelly Company, Inc., some building materials equal in value to the amount of the judgment and for the purchase of which judgment was entered against appellant; that defendant at the time of said sales and deliveries was a stockholder and officer of said Kelly corporation; that prior to said sales and deliveries said Kelly Company did not have an established credit with appellee; that the deliveries were made at the instance and order of appellant; that the items so delivered and the amounts of the sales were entered on the books of appellee in the name of Kelly Company, Inc., and no entries were made on said books in the name of defendant.

The contention of appellant, supported by the tendency of his evidence, is that the deliveries were made on the sole or partial credit of Kelly Company, Inc. He further contends that he did not direct or authorize such sales and deliveries on his credit to the exclusion of Kelly Company. He signed no agreement, note or memorandum to answer for the debt of Kelly Company with respect to the sales and deliveries of the building materials.

The contention of appellee is that deliveries of the materials to the corporation were on the exclusive credit of appellant, at his direction, and that entries of said sales on its books of account in the name of Kelly Company, Inc., were done at the direction of appellant.

Mr. John Marshall, Treasurer of appellee, a witness for plaintiff, testified as follows:

"Q Did he, or did he not, represent to you that this was going to be his debt?

"A Yes, sir, he did. That was my understanding or we would not have made charges on an open account.

"Q That was your understanding based on his representations?

"A Yes, sir.

"Q Was credit extended exclusively on this representation by Danley?

[No answer]

* * * * * *

"Q Was it or was it not, extended exclusively on Mr. Danley's representation that he would pay it?

"A Yes, sir.

* * * * * *

"Q Mr. Marshall, I am going to ask you based on the representation to you by Mr. Danley were you extending credit to him and not to the Kelly Company?

"A That is correct. The Kelly Company has never had an account with us. And I knew the Kelly Company bankrupted, the personnel in it, and their credit was not any good with us, and had never been. And all the business that we have had prior to March 16, 1961, which was the first open account basis we had, all the business we had done prior to that had been on a cash basis. And, as a matter of fact, on the last one prior to our charging them they paid it by check on a cash basis and the check was returned marked 'Insufficient Funds', and they had never had an account with us.

* * * * * *

"Q You did not deliver anything, if I understand you correctly, until Mr. Danley said he would pay it?

"A The charges that I have, that is correct.

"Q Now, Mr. Marshall, did you always look to Mr. Erle Danley for payment of these accounts?

"A I did, yes, sir.

* * * * * *

"BY THE COURT:

"Q Did you extend credit to Danley or did you extend credit to the company?

"A I extended credit to Mr. Danley. His account has always been good with us.

* * * * * *

"BY THE COURT:

"Q I understand you to say the reason you mailed these bills to the corporation rather than Danley was he requested you to do it?

"A That's correct. He said, I put it in the name of Kelly Company and requested that I enter the order in that name.

"Q Well, that is what I understood you to say, but I wanted to make certain.

"A That is correct."

Fred Marshall, Vice-President of appellee, was introduced as a witness for appellee and testified as follows:

"A Well, Mr. Danley had a personal account with us, and then when he made these purchases, why, he requested that I charge the invoices up to Kelly Company and that is the reason we had the two accounts.

"Q That was at his request?

"A Yes, sir.

* * * * * *

"Q To whom were you looking for payment on this order?

"A Mr. Danley.

* * * * * *

"Q Now, I believe you stated a moment ago that there was no credit ever extended to Kelly Company; is that correct?

"A That's correct.

"Q  Who were you looking directly to for payment?

"A  Mr. Danley.

"Q  And the invoice and the ledger sheet here, Kelly Company, that was done at the request of Mr. Danley?

"A  Yes, sir."

Cross-Examination

"A  I said, 'Mr. Danley, you know that the Kelly Company does not have an account with us, we do not charge the Kelly Company.'

"Q  And what did he say?

"A  He said, 'Well, go ahead and handle it like this and it will be all right.'

"Q  And what did you say?

"A  I said, 'All right.'"

Redirect Examination

"Q  Was Kelly Company ever partially extended credit, did you ever extend them any credit, or partial?

"A  No, sir, we did not.

"Q  Now, when you used the words charge to Kelly Company, what do you mean by charging, were you charging it out to Kelly Company and expecting payment by Kelly Company?

"A  No, sir.

"Q  What were you doing?

"A  We were invoicing it to Kelly Company.

"Q  Who were you looking to for payment?

"A  We were looking to Mr. Danley for payment."

Muriel Snead, bookkeeper and witness for plaintiff, testified:

"Q  Do you know whether or not Kelly Company had an account with Marshall Lumber & Mill Company, was there a charge to them prior to March 16, 1961?

"A  No, I don't believe we did.

"Q  You did not?

"A  No.

"Q  Do you know why you did not charge to them? Of your own knowledge, do you know why you didn't charge to them?

"A  Because I just posted from the invoices, I know that Mr. John Marshall had said we were not to charge things to them.

"Q  And when the first invoice came in do you recall, or did you question it?

"A  Yes.  I called Cary Fuller at the mill working department and asked him about it to be sure he knew it was all right, and he said it was okay because they were dealing with Mr. Danley."

While the testimony on the part of each Mr. Marshall as to the exclusive credit extension to Mr. Danley was weakened on cross examination by references to what was said between them and Mr. Danley, the aforequoted evidence was sufficient to justify the trial judge in concluding, as he must have done from entry of judgment for plaintiff, that credit was extended exclusively to Mr. Danley for the items delivered to Kelly Company; and also to sustain the conclusion of the trial court that the entry of said sales to the account of Kelly Company was at the direction of defendant.

A factual issue of such extension of credit was made when defendant denied categorically that he ever agreed to be responsible, directly or indirectly, for payment of the debt incident to the delivery of said materials.

■  We have consistently held that where there was evidence justifying a conclusion of the trial court, sitting without a jury, such conclusion will not be disturbed unless palpably wrong.  National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474(17).  This rule has application to the case at bar and we adhere thereto.

The factual basis for the judgment rendered by the trial court is agreeable with our pronouncement in the case of Marx v. Bell, Moore & Company, 48 Ala. 497(1), wherein we held "that if credit is given to A, a promise by B to pay the debt, must be in writing, to be obligatory; but if credit in the first instance, is given to B, although the consideration passes to A, it is an original undertaking by B, and he is bound to perform it, although there is no writing."

The fact that the materials were charged on the books of plaintiff to Kelly Company, to which they were delivered, is strong, but not conclusive, evidence that defendant's promise to pay was collateral and within the statute of frauds. Boykin v. Dohlonde & Co., 37 Ala. 577(2). Such charge may be explained and made consistent with the assumption of defendant's primary liability. Boykin v. Dohlonde, supra. The explanation that the charge was made at the direction and instance of defendant was sufficient to meet the demands of law.

■ We copy from the transcript of the evidence as follows:

"Q I will ask you if on the ticket you have in your hand dated January 8, 1962, what notation is found on that, if any?

"A Order for Kelly Company, it was for the Alford job in Columbus.

"MR. KAUFMAN: Your Honor, we are going to object to the self-serving entries, his entries.

"MR. PHELPS: I think his understanding and the representations made to Mr. Marshall by Mr. Danley—

"MR. KAUFMAN: We don't object to his understanding, we object to the self-serving entries of the records.

"MR. PHELPS: I think that is entirely admissible to show we checked with Danley before he sent the stuff out there.

"THE COURT: I will let you ask him that.

"BY MR. PHELPS:

"Q What notation, if any, do you find on this ticket?

"BY THE COURT:

"Q Did you make the notations?

"A Yes, sir.

"BY MR. PHELPS:

"Q All right.

"A Well, this is a different job, it was called the Alford job. You see, we show the name of the job, and the address is in Columbus. I remember when it came up I wondered whether it was Columbus, Mississippi, or what. But Mr. Fuller brought that in to me and asked for approval on it and I called Mr. Danley on that, and I have indicated it on there as OK'd by Mr. Erle Danley, JRM, and turned it back to Mr. Fuller to go ahead and enter the order in the mill for us to get it out. And Kelly Company picked that order up. We did not deliver that. That was picked up by Mr. J. B. Austin. He signed the ticket. We had one more charge on that same job."

Appellant by assignment of error asserts that the trial court committed prejudicial error in overruling his objection to the question aforequoted. As we understand, appellant's objection was directed to the words, "OK'd by Mr. Erle Danley, JRM," that appear on a sales ticket for materials delivered to Mr. Austin, amounting to $39.30. The initials were those of the witness.

The notation was nothing more than a memorandum of the witness that in a telephone conversation the defendant had approved the order and sale of the materials listed on the sales ticket. It was a business entry within the purview of § 415, Title 7, Code 1940. The only ground of the objection was that the notation was self-serving. We can consider only the ground of objection which was assigned. Bates v. Bank of

Moulton, 226 Ala. 679, 148 So. 150(2). The trial court did not commit error in allowing the witness to answer the question.

The judgment of the trial court is due to be affirmed. It is so ordered.

The foregoing opinion was prepared by BOWEN W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

All the Justices concur.