BRADLEY, Judge.
From a judgment against plaintiff on plaintiff’s complaint and in favor of defendant on defendant’s counterclaim against plaintiff for $1,850, plaintiff appeals. We affirm.
Jabeo, Inc., a corporation, filed a complaint in the Circuit Court of Colbert County against Harold J. Kelly and Mary Jo Kelly alleging that they were indebted to Jabeo in the amount of $5,010 for labor and materials furnished in the construction of a swimming pool. Mary Jo Kelly was stricken as a party-defendant and Harold J. Kelly filed an answer denying that he was indebted to Jabeo in any amount. Kelly also filed a counterclaim seeking damages due to the failure of Jabeo to construct a swimming pool on his property in a good and workmanlike manner as previously agreed. After a trial before the court, sitting without a jury, a judgment was rendered against. Jabeo on its complaint and in favor of Kelly on his counterclaim for $1,850. Jabeo appeals from this decree.
Jabeo presents the question for review by this court as follows: “Did the [trial] Court err in finding for the defendants and against the plaintiff on the counterclaim of the defendants and awarding to the defendants the sum of $1850.00?” In effect Jab-co’s contention is that the evidence is insufficient to support the trial court’s judgment in favor of Kelly on his counterclaim.
The applicable rule where a trial court sits without a jury is that the trial court’s judgment will be affirmed if there is any evidence to sustain its judgment. Dan-ley v. Marshall Lumber & Mill Co., 277 Ala. 551, 173 So.2d 94 (1965); Hover v. Kirk, 56 Ala.App. 257, 321 So.2d 214 (1975). Here there is ample evidence to support the trial court’s judgment.
The record shows that a written contract was entered into in 1972 between Jabeo and Kelly for Jabeo to construct a swimming pool forty feet in length and twenty feet in width on property belonging to Kelly. Kelly was to pay $8,350 for this work as fol *792 lows: ten percent upon signing the contract, sixty percent upon completion of the vertical walls, twenty-five percent upon placing of coping, and the balance when the pool was placed in operation. Kelly signed the contract, paid $850, and construction began on June 19, 1972. On June 28 Jabeo sent Kelly a bill for $5,010, claiming that the vertical walls had been completed and therefore, according to the contract, sixty percent of the pool was completed. Kelly refused to pay the' bill on the ground that the walls had not been completed in a good and workmanlike manner as provided in the contract.
On the very day that Jabeo submitted its bill to Kelly for the $5,010, its workmen were attempting to repair a hole in the ten-inch thick west wall caused by the failure of the concrete to settle properly around a light fixture. An architect and engineer employed by Kelly after he received the bill to advise him about the completeness of this portion of the agreement testified that the walls had not been constructed in a good and workmanlike manner and that the west wall should be torn out and repoured. Other repairs were recommended.
Jabeo removed and replaced the west wall. After this work was completed, Jab-eo did no further work and sent no other bills to Kelly. Kelly then requested Jabeo to complete the pool as originally agreed upon and stated payment would be made when work resumed. Jabeo commenced work on August 14, 1972.
When the workers returned to the job-site, they discovered the pool had floated. Due to excess ground water around the pool and the absence of water in the pool to hold it in place, the pool rose about six inches on the deep end, leaving a void beneath that end. Jabeo informed Kelly that the pool had floated but undertook to remedy the situation without authorization from Kelly. The repair consisted of punching several holes in the bottom of the concrete pool through which concrete would be gravity fed into the voids under the pool. Upon seeing the holes in the bottom of the pool, Kelly stopped the work on the pool before the concrete was placed in the holes and sought an explanation from Jabeo. Kelly contended that the repairs were not being correctly made, that due to faulty construction methods Jabeo had allowed the pool to float, and that the proposed repairs would not permit the construction of a pool in accordance with prior plans and specifications.
The engineer and another pool builder testified that the gravity feed method of placing concrete in the voids under the pool would not satisfactorily correct the floating. Also the engineer, who inspected the pool shortly after it floated, stated that the relief plug in the bottom of the pool was either stopped up with concrete or did not function properly. The relief plug is an opening in the bottom of the pool designed to admit ground water into the pool so as to eliminate the buildup of hydrostatic pressure caused by water collecting in and around the pool shell during construction. Had the relief plug functioned properly, the pool would not have floated.
The president of Jabeo admitted that any repairs made on the floated pool would not place the pool back in the same elevation as previously agreed upon in the contract. A vice president of Jabeo said that the proposed repairs would leave the pool several inches deeper on the shallow end, necessitating a change in the landscaping around the pool. The architect testified that the only way to place the pool in the same elevation as contracted for would be to tear it out and start over. Another witness for Kelly, also a swimming pool builder, said that it would cost approximately $2,000 to take out the concrete which had been poured and clean the excavation out so that new forms for the walls could be placed in the hole.
We conclude that there was ample evidence to support the trial court’s judgment, and therefore affirm.
AFFIRMED.
WRIGHT, P. J„ and HOLMES, J., concur.