This appeal is from a judgment on a jury verdict awarding the plaintiffs $250,000 in compensatory damages and $250,000 in punitive damages in an action alleging breach of contract and fraud. Abram Brown, Jr., and Rosie Nell Holcombe brought this action against United Companies Financial Corporation, Inc. ("United Companies"), and Joe Seale, alleging that the defendants had breached a contract to have the plaintiffs' home renovated and had fraudulently misrepresented "that they would assume the responsibility of having said renovation and repairs completed in a satisfactory and acceptable manner." The defendants argue[1] that the trial court erred in denying their motion for a directed verdict on the contract count based on the Statute of Frauds and on the fraud count based on the absence of proof of intent not to perform the alleged promise; in allowing punitive damages to be assessed against United Companies; in sustaining an objection to a question posed to Seale; and in overruling their motion for new trial based on improper closing argument.
Brown and Holcombe are apparently common law husband and wife. They own a house in Hayneville, Alabama, where they live with their two daughters and *Page 472 
three other family members. In the summer of 1987 they hired a contractor to add a kitchen, a den, a bedroom, a bathroom, and a carport to the house. They bought the materials and the contractor began work, but he left the job unfinished. They negotiated with another contractor, who agreed to finish the work for $12,000. Brown and Holcombe went to the Montgomery office of United Companies and talked to Seale, the manager of that office, about financing the remaining improvements. Seale told them that United Companies would not finance the work if it was done by the contractor Brown and Holcombe proposed, but that it would finance the work if they would hire Ed Holcomb, another contractor. After Holcomb agreed to perform the work for $12,000, Brown and Holcombe executed a note and mortgage to obtain the financing from United Companies.
United Companies placed the funds in escrow, with $4,000 to be paid to Ed Holcomb at the beginning of the work, $4,000 to be paid when it was half completed, and $4,000 to be paid after the work had been satisfactorily completed. Holcomb performed the work to the point where he received the second $4,000. He then approached Seale about obtaining the final $4,000 without first completing the work. Seale asked his supervisor if the final check could be issued and the supervisor agreed.
Ed Holcomb drove to the house with Seale, and the two men went inside and looked at the work in progress. They went outside, and Holcomb came back in to ask Mrs. Holcombe to endorse the check and a certificate of completion that Seale had prepared. She refused, stating that the work was not yet complete. Holcomb left the house and gave the documents to Seale, who returned with them. Mrs. Holcombe again refused to sign the documents because the work was not complete. She testified that Seale then promised that he would not give the check to Holcomb until the work was finished and that he would come from Montgomery and inspect the house before he gave the check to Holcomb. She testified that, based on that promise, she signed the check and the certificate of completion. Later in her testimony she said that Seale, in inducing her to sign the documents, promised that "he would make sure my house would be complete, would be fixed."
Seale and Holcomb then went to Brown's place of employment and obtained his signature on the documents. Brown testified that, when he objected to signing the check because the work was not complete, Seale told him that "he would see to it Mr. Holcomb would come back, you know, complete and finish the house." Holcomb negotiated the check that day.
Mrs. Holcombe testified that, after she signed the check, neither Holcomb nor any of his employees returned to continue the work. The first payment on the note was due November 5, 1987. Mrs. Holcombe testified that she made that payment and continued to make the monthly payments until July 1988. During that period, she said, she frequently telephoned Seale to ask him to get Holcomb back on the job, and Seale assured her that he would do so. She also testified that she went to Seale's office, that he told her, "Rosie, I know I'm giving you nothing but static," that he telephoned Holcomb, and that Holcomb promised to come finish the job, but did not. When Mrs. Holcombe did not make the July 1988 payment, Seale and Holcomb came to the house and promised to come finish the work if she would make the payment. She paid the July payment, a late charge, and the August payment. Seale and Holcomb left with the money and she never saw Holcomb again.
Mrs. Holcombe continued to ask Seale to send Holcomb to finish the work, and he continued to assure her that he would. She did not make any more payments and, in November 1988, United Companies sent Mrs. Holcombe notice that it was instituting foreclosure proceedings on the mortgage and it published in the Lowndes County newspaper a similar notice. The record does not disclose whether such proceedings were instituted, but Brown and Holcombe were still in the house at the time of trial. *Page 473 
The first argument made by United Companies and Seale is that the alleged promise does not support a contract action because it is at most a "special promise to answer for the debt, default or miscarriage of another," Ala. Code 1975, § 8-9-2(3). They cite Danley v. Marshall Lumber Mill Co., 277 Ala. 551,173 So.2d 94 (1965), for their argument that a contract such as that alleged here is a "collateral contract" and therefore governed by the provision of the Statute of Frauds just quoted. They also cite Herrington v. Central Soya Co., 420 So.2d 1
(Ala. 1982).
In response, Brown and Holcombe cite Brindley ConstructionCo. v. Byco Plastics, Inc., 456 So.2d 269 (Ala. 1984), for the proposition that, if credit is extended to both the promisor and the debtor, the agreement is an original undertaking, not a collateral one, and therefore not within the Statute of Frauds. They also cite Riteway Machine Mfg. Co. v. First Nat'l Bankof Tuscumbia, 374 So.2d 1361 (Ala. 1979); and Landers v. Ramey,245 Ala. 283, 16 So.2d 785 (1944).
The jury could have found from the evidence that Seale promised that United Companies would undertake to complete the addition if Brown and Holcombe would accelerate their payment to Holcomb. Such an agreement would be an original undertaking and not within the Statute of Frauds. The cases cited above uniformly hold that it ordinarily is a question for the jury whether an agreement is an original undertaking by the promisor or a collateral promise to answer for the debt, default, or miscarriage of another. The trial court did not err in denying the motion for directed verdict on this ground.
United Companies and Seale next argue that there was no proof that Seale intended not to perform his promise at the time he made it. If a fraud action is based on a promise to perform an act in the future, the proof of the falsity of the representation requires proof that, at the time the promise was made, "the promisor had no intention of carrying out the promise, but rather had a present intent to deceive."Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519
(Ala. 1983), appeal after remand, 451 So.2d 801 (Ala. 1984).
As our summary of the evidence shows, Mrs. Holcombe testified that Seale promised that he would not deliver the endorsed check to Holcomb until he personally ascertained that the work had been completed satisfactorily. Brown and Holcomb argue that the intent not to perform this promise is shown by the fact that, shortly after Seale obtained Brown's endorsement, Holcomb negotiated the check. We agree that the sequence of events is so clearly one transaction as to establish intent not to honor the promise at the time it was made. United Companies and Seale counter with the argument that the complaint's allegation of fraud did not include the aspect testified to by Mrs. Holcombe. However, no objection was made to Mrs. Holcombe's testimony, so the complaint may be deemed amended by consent, Rule 15(b), Ala.R.Civ.P., and trial court did not err in submitting the fraud claim to the jury.
Furthermore, Seale's intent not to perform the promise to ensure that the work would be completed may be inferred from the evidence that, while assuring Mrs. Holcombe that he would have the work completed, he never took any effective steps to do so, and that when Mrs. Holcombe fell behind on the mortgage payment he promptly arrived at the house with Holcomb to collect the payment but still did not take effective steps to have the repairs completed.
United Companies next argues that, pursuant to Ala. Code 1975, § 6-11-27, the trial court should not have submitted to the jury the claim for punitive damages against United Companies. Without addressing the question of whether Seale's authority as manager of the Montgomery office was sufficient to bind the company in this respect, we hold that the requirement of this Code section was satisfied by Seale's testimony that his supervisor approved the issuance of the check before the work had been completed. Therefore, this issue presents no ground for reversal. *Page 474 
United Companies and Seale argue that the court erred in sustaining an objection to a question posed to Seale. After testifying that this was the first loan on which he had worked with Holcomb and that he had called United Companies' Birmingham office to find out about Holcomb, Seale was asked what the Birmingham office had told him. The trial court sustained the plaintiffs' objection over the defendants' argument that they were merely trying to prove Seale's intent, not the truth of anything said by the employee in the Birmingham office. Seale and United Companies renew that argument here. Because the question was at most only remotely related to Seale's intent at the time he induced Brown and Holcombe to endorse the check and the completion certificate prematurely, the trial court did not abuse its discretion in sustaining the objection. Questions of materiality, relevancy, and remoteness of evidence are within the trial court's discretion, and the court's rulings will not be disturbed unless that discretion is grossly abused. Ryan v. Acuff,435 So.2d 1244, 1250 (Ala. 1983).
Finally, United Companies and Seale argue that the trial court erroneously allowed testimony regarding, and that the plaintiffs' attorney made improper reference in closing argument to, the wealth of United Companies. They cite OtisElevator Co. v. Stallworth, 474 So.2d 82 (Ala. 1985). The record discloses, however, that the question asked of Seale was merely how many offices United Companies had, and that the objection did not state any grounds. During closing argument, the plaintiffs' attorney made reference to Seale's answer that United Companies had 120 offices, and the defendant's attorney made a general objection that the argument was improper. The trial court overruled the objection. United Companies and Seale also point to two other statements made during the plaintiffs' closing argument, but no objection at all was made to those statements.
After reviewing the record, we cannot hold that the trial court erred in overruling the general objection to the question posed to Seale. See All American Life Cas. Co. v. Dillard,287 Ala. 673, 681, 255 So.2d 17, 23 (1971). Also, the trial court has broad discretion in ruling on matters in argument of counsel. Ott v. Fox, 362 So.2d 836 (Ala. 1978). Given the generality of the objections that were made and the absence of objections at other points in the argument, we cannot say that the trial court erred in overruling the defendants' motion for new trial on this ground.
Although United Companies and Seale do not argue that the verdict was excessive, we note that the trial court issued a seven-page order, pursuant to Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1989), that reads as follows:
 "This cause came on to be heard by this Court on the motions filed by the defendants and after carefully considering these motions, this Court is of the opinion that said motions by both defendants are due to be denied. Therefore, this Court hereby enters the following Orders:
 "Defendants' Motion for Judgment Notwithstanding the Verdict or in the Alternative, a New Trial as to the verdict awarded by the jury in this cause in favor of the plaintiffs and against the defendants is denied.
 "Pursuant to the requirements set out by the Alabama Supreme Court in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986), this Court hereby sets out the below-stated factors which it considered in denying defendants' post-trial motions based on the alleged excessiveness of the jury verdict.
 "In ruling on these motions, the Court considered the entire trial, and all of the evidence that was introduced therein. The Court observed the demeanor and credibility of all the witnesses, parties, and attorneys. The Court found that none of the witnesses, parties, or attorneys were guilty of any misconduct which would have biased the jury against the defendants. As a matter of fact, the trial, which was conducted over several *Page 475 
days, was rather low-key. There were relatively few objections for a trial of this nature from any of the parties.
 "The jury was a typical Lowndes County jury composed of sincere and capable men and women, there being eleven blacks and one white, who consciously tried to render a verdict based upon the evidence and the law as the court instructed them. They were from various walks of life and represented a cross section of the citizens of Lowndes County. The jury took ample time to have reasonably considered all of the sworn testimony and all of the evidentiary documents, as well as photographs in this case, and, further, to have applied the law thereto in reaching its verdict. The Court closely observed each member of the jury and is convinced that the verdict was not tainted by bias, prejudice, or emotion. There is always a possibility that another jury may award more or less or that various judges might disagree as to the amount of damages which should be awarded in this case as well as each and every other case. However, the only relevant consideration is that the Court's conscience was not shocked or offended by the size of the verdicts and the court considers that there was ample evidence in the record to support them. The verdicts awarded in this case were certainly not excessive as a matter of law nor were they based upon bias, passion, corruption, or any other improper motive. The Court of course may not substitute its judgment for that of the jury.
 "Based on the totality of the evidence and all attendant circumstances that were presented to the jury in regard to the relationship of the parties and the alleged misconduct of the defendants, there was more than enough evidence to render the defendants liable. The jury was justified in awarding sufficient damages to prevent similar wrongs in the future, especially in light of the fact that the verdict in this case would have had little impact on the defendants unless it was substantial. The Court's understanding of the purpose of awarding punitive damages is to punish the wrongdoer and deter others from similar wrongful conduct in the future. The verdicts in this case were large enough to deter this type of conduct. The verdicts will punish the defendants but at the same time they were not so large as to unduly burden the defendants based upon what information is before this Court. The Court perceives of no innocent parties who would be adversely impacted by the verdicts in this case. The defendants offered no evidence whatsoever as to what impact, if any, this verdict may have on the defendants during the hearing on defendants' post-trial motions. Pursuant to the punitive damages statute they were free to do so but obviously chose not to offer any such testimony or evidence. Further, the Court would note that the defendants argued in their motion and brief that the award of the verdicts in this case of $250,000 in compensatory damages and $250,000 in punitive damages would have an improper impact on the plaintiffs by awarding them a windfall. There is no evidence before the Court, other than what the Court could assume on conjecture from the appearance of the parties at the trial, that would support this claim. Therefore, the Court must hereby find that there is no evidence to support the claim of the defendants that the award of these verdicts would unjustly provide a windfall to the plaintiffs.
 "There is abundant evidence from the trial of this case that Joe Seale, the manager of United Companies Financial Corporation, Inc. (hereinafter "United") in its Montgomery location, was the person who was contacted on each occasion regarding the repairs that were to be made to the plaintiffs' home. The plaintiffs testified that they did not know Ed Holcomb, the contractor, and would never have met Ed Holcomb . . . but for the requirement placed upon them by United to use Ed Holcomb. There was substantial testimony regarding the fact that the plaintiffs did not even have a telephone number at which to reach Ed Holcomb but rather had to go through Joe Seale *Page 476 
with United in order to locate Mr. Holcomb and make certain requests to Holcomb regarding the repairs that were to be made as promised by Joe Seale. The record is replete with promises by Joe Seale that the work would be completed. The documents in the case indicate that certain agreements were made by and between the plaintiffs, United, and Ed Holcomb. The evidence also was substantial that Joe Seale convinced the plaintiffs to sign the documents which released the last payment to Ed Holcomb and that Joe Seale came to their house and personally obtained this signature for the release of said monies. The evidence is substantial also that Joe Seale along with Ed Holcomb went to the place of work of Abram Brown and pulled him off of the job to obtain his signature on these documents. The Court recalls the testimony regarding this matter due in part to the fact that the Court recalls that Abram Brown . . . cannot read. Some of the documents upon which Abram Brown and Rosie Nell Holcombe's signatures were obtained authorized the release of monies from escrow. Joe Seale had promised the plaintiffs that all monies would be kept in escrow until the work was finished. Joe Seale testified, and the evidence was clear and abundant at trial of the case, that Joe Seale authorized by a telephone call (as opposed to written authorization) the release of monies from escrow to Ed Holcomb. Joe Seale testified that he obtained authorization to do this from his supervisor at United. Further, the evidence was clear [and] convincing at trial that all of the actions of Joe Seale were conducted on behalf of United and for the benefit of United. Specifically, the testimony recalled by the Court of Joe Seale was that his activities were all approved by his superiors and he was always acting on behalf of United in the line and scope of his employment and duties as manager of the Montgomery office. From this evidence it was clear that United was aware that the work was not even near completion and yet United authorized the release of the monies from escrow in violation of the escrow agreement or in the alternative they advised the escrow agent that the work was complete when in fact it was not and they knew it was not.
 "Based upon the totality of the evidence it is clear that the work to be done at the home of the plaintiffs was the work of United and not that of some independent individual acting on his own. It is also clear from all of the evidence adduced at trial that the condition in which the house was left was deplorable. The walls were not put up in certain rooms. Wall covering material such as paneling was not put up in other rooms. The bathroom which was to be installed was nothing more than a framed room with a hole in the floor where the commode was supposed to be placed. Further, the evidence was clear that . . . the failure of the defendants to do the work which they set out to accomplish and promised and guaranteed would be finished left the plaintiffs in a situation where they had little use of their home. There was no water to the kitchen whatsoever before plaintiffs took it upon themselves to get another plumber to perform the plumbing that should have been completed on the job on which Joe Seale, United, and Ed Holcomb were involved. At the time of trial plaintiffs still did not have hot water in the kitchen and were carrying hot water from the original bathroom in the house.
 "There was ample testimony regarding all of the problems with the house and . . . all of the confusion and requests for completion of the work to convince the Court and the jury that the plaintiffs suffered extreme mental anguish as a result of the defendants' failures to meet their obligations and agreements which resulted in the home of the plaintiffs remaining in a deplorable condition for months and months.
 "There was a great deal of testimony regarding what needed to be done to the house and what did not need to be done to the house. The plaintiffs elicited testimony from a contractor which gave an estimate in excess of $9,000 to complete *Page 477 
everything that needed to be completed and correct those problems which needed to be corrected notwithstanding the work which had already been performed at the request of the plaintiffs by other contractors and persons to help mitigate the problems and conditions of their home.
 "It is clear that United Companies Financial Corporation, Inc., had full control of the entire transaction and [that] with knowledge of the Alabama law concerning contracts it made misrepresentations by and through its manager, who was the highest officer in the Montgomery office, Joe Seale. These representations clearly caused damages and mental anguish to the plaintiffs. . ..
 "In light of everything contained in the record and all evidence which was adduced at trial, the amount of the verdict is not excessive, considering the facts of this case and, further, said verdict will serve to deter others in the position of the defendants from acting in a similar manner."
For the reasons stated, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] The defendants' counsel on appeal were not their counsel at trial.