314 So.2d 284

**BURGREEN CONTRACTING COMPANY, INC.**

v.

**Jack GOODMAN.**

**Civ. 231.**

Court of Civil Appeals of Alabama.

On Rehearing April 30, 1975.

Malone, Steele & Alexander, Athens, for appellee.

Patton, Latham & Legge, Athens, for appellant.

212

## ON REHEARING

BRADLEY, Judge.

On original submission the appeal in this case was dismissed, and the author of that opinion was Supernumerary Judge T. Werth Thagard. After rehearing was applied for but before a decision could be made, Judge Thagard died. The case was reassigned to the author of the opinion on rehearing.

The original opinion in the case is withdrawn and the following opinion filed.

The appeal is from a judgment for plaintiff in the amount of $3,500 for injury to two brood mares.

Plaintiff filed a one-count complaint on August 26, 1971. A motion to dismiss the complaint was overruled. In January 1973 plaintiff amended its complaint by adding Counts Two and Three. Defendant, on March 15, 1973, filed a motion to strike a portion of Count Two and all of Count Three. This motion was overruled.

Prior to the beginning of the trial on March 19, 1973, by agreement of the parties, Counts One and Three were stricken, and the case went to the jury on Count Two. There was a verdict and judgment rendered in favor of plaintiff for $3,500. The appeal is from that judgment.

After the appeal was filed in this court, but before submission, appellee filed a motion to strike the transcript of the record and to affirm the trial court's judgment.

*On the Motion*

Appellee assigns two grounds in support of his motion to strike, the first of which charges that the transcript of the record was not filed in this court within sixty (60) days after the transcript of the evidence was established in the trial court as required by *Supreme Court Rule 37*.

*Rule 37* of the *Supreme Court Rules* provides, in pertinent part, as follows:

"In all cases, either civil or criminal, . . . the transcript of the record shall be filed in this court within sixty days after the transcript of the evidence has been established in the court below. The trial judge may extend the time for filing transcript of the record in this court for good cause shown for not to exceed thirty days, and this extension may be made within the thirty additional days, provided that in no event shall such extension project the time for filing the transcript beyond ninety days. Thereafter the time for filing in this court may be extended only by this court for good cause shown upon petition in writing of which adversary counsel must have ten days' notice."

■ Should there be no objections made within ten days after the filing of the transcript of evidence in the circuit clerk's office, the transcript is deemed *established* on the day that it was filed. Stevens v. Thompson, 279 Ala. 232, 184 So.2d 140.

■ The transcript of the record filed in this court shows on transcript page 23 that the transcript of evidence was filed in the circuit clerk's office on July 7, 1974. The record does not contain any objections made to the transcript of evidence filed in the circuit clerk's office.

The transcript of the record was filed in this court on September 3, 1974, which is within sixty (60) days of the establishment of the transcript of evidence in the trial court. No violation of Supreme Court Rule 37 here.

■ By its second ground, appellant says that the extensions in time which were granted by the trial judge for the filing of the transcript of the evidence were unreasonable and were to the prejudice of appellee, and alleges that some of the delay was the fault of appellant. There were seven motions of appellant for additional time for filing the transcript of the evidence and seven orders of the court granting the extensions. The first such order was dated September 12, 1973 and the last was dated July 8, 1974. Although the orders do not so recite, we have no doubt that the trial court had good reason for granting these extensions. At any rate these matters were in his sound discretion. We find no evidence that there was an abuse thereof. There is no merit in the second ground of the motion to strike.

The motion to strike the transcript of the record filed in this court and to affirm the judgment of the trial court is denied.

*On the Merits*

The facts reveal that plaintiff, Jack Goodman, is a practicing veterinarian in Limestone County, Alabama. Goodman, in association with another person, had leased some land from Kaiserling and Shering, and the leased land was used to pasture horses. These horses were mostly brood mares. On August 27, 1970 Goodman learned that his horses were out of the pasture. He went to the pasture and found that a portion of a fence had been torn down and the horses had escaped from the pasture and were found in a nearby field where corn and soybeans were growing. The horses had eaten some of the green corn and green soybeans. Two of the horses were pregnant at this time and as a result of the ingestion of this green vegetation the horses were caused to founder and to abort.

When Goodman found his fence torn down, he also discovered that a highway was being built through a portion of the land that he had leased. He contacted the appellant-defendant who was doing the clearing of the right-of-way and informed its representative, Bobby Burgreen, that the fence was down and his horses had gotten out of their pasture.

A temporary fence was erected the next day by appellant and it was still standing at the time of trial.

There was testimony by the senior project engineer for the State Highway Department that the land Goodman had under lease abutted the right-of-way of a portion of Interstate Highway 65 that was under construction. The prime contractor on the job was Hot Mix, Inc. and the subcontractor was appellant.

The engineer stated that the plans and specifications for the clearing, etc. were incorporated in appellant's contract. There was a provision in the plans and specifications as follows:

"Where the removal of existing cross-fences is necessary for construction and where permanent fences cannot be erected until a later date and temporary fences are necessary to control livestock, it shall be furnished by the contractor and the cost shall be absorbed in other items of work."

Appellant has argued several assignments of error in its brief and the first ones we will consider claim that Count Two of the complaint—which was the only count in the complaint when it was given to the jury—fails to state a cause of action. In support of such contention, appellant says that Count Two is devoid of any facts showing a breach of contract by appellant. Furthermore, should appellee have a cause of action, it would sound in tort rather than contract.

The supreme court in Anderson v. Howard Hall Co., 278 Ala. 491, 179 So.2d 71, said:

"The rule in this state, which is in accord with the great weight of American authority, is that a third person may enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration. Barlowe v. Employers Ins. Co. of Alabama et al., 237 Ala. 665, 188 So. 896; Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58; Fite v. Pearson, 215 Ala. 521, 111 So. 15; Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Mutual Benefit Health and Accident Ass'n of Omaha v. Bullard, 270 Ala. 558, 120 So.2d 714.

"But the question frequently arises as to when a contract will be considered made for the benefit of a third person, and the effect of our holdings is that the contract must have been intended for the direct benefit of the third person, as distinguished from a mere incidental benefit to him, in order to entitle such third person to sue for a breach of the contract. [Citations omitted.]"

Count Two alleged that the prime contract between the State of Alabama and Hot Mix, Inc. provided that:

"Where the removal of existing cross fences is necessary for construction and where permanent fences cannot be erected until later and a temporary fence is necessary to control livestock, it shall be furnished by the contractor and the cost absorbed in other items of work."

It further alleged that appellant in its contract with Hot Mix, Inc. to do the grading and drainage on the project in question also agreed to abide by the provision above set out and that appellant failed to erect temporary fences along the right-of-way so as to prevent appellee's horses from getting out of their enclosure and eating vegetation that was harmful to them, thereby causing appellee to be damaged.

The gist of the complaint is that appellant failed to erect temporary fences along the right-of-way where existing fences had been removed as required by the contract and, as a result of this omission, appellee's horses were allowed to escape their enclosure and injure themselves to appellee's detriment.

In support of his complaint, appellee says that appellant promised Hot Mix, Inc. that it would, where necessary to protect livestock, erect temporary fences along the right-of-way to keep the livestock in their present enclosure and prevent them from getting out. Appellee says that he had a fenced pasture where horses were kept and appellant tore down a portion of the fencing for the purpose of carrying out its contract to build a segment of Interstate Highway 65 in Limestone County. He says, in effect, that this provision in appellant's contract was for his benefit.

■ The question to be answered next as pointed out in *Anderson, supra,* is whether appellant was a direct beneficiary or an incidental beneficiary. Should appellant be a direct beneficiary, he would have a cause of action sounding in contract; if he were an incidental beneficiary of this contract, he would not have a contract action.

In Tennessee Coal, Iron & R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459, the appellant had entered into a contract with a labor organization wherein a provision of that contract set out certain safety measures for the protection of its employees to be observed by the appellant in its mining operations. Appellee, an employee of appellant in one of its mines and also a member of the labor organization covered by the contract in question, was injured while on the job and as a result, so he alleged, of the failure of appellant to provide the safety measures covered by the contract.

The supreme court said:

"The contract, as set forth in the complaint in connection with its allegations, shows that it was made in respect to the ventilating system for the direct benefit of a class of which plaintiff was a member, and therefore he may sue for its breach when suffering damages as a third party beneficiary. [Citations omitted.]"

■ In the case at bar, we consider appellee to be a member of the class that was intended to be protected by the contractual provision in controversy. Not every adjoining property owner to the right-of-way of I–65 was to be benefited by the provision in question, but only those property owners who had livestock which might escape if temporary fences were not erected to restrain them. Appellee was one of those persons to be benefited by such provision in appellant's contract. Such a benefit is a direct benefit for appellee. Appellee being a third-party beneficiary of the contract between appellant and Hot Mix, Inc., he may sue for its breach. Tennessee Coal, Iron & R. Co. v. Sizemore, *supra*; Collins Construction Co. v. Taylor, 372 S. W.2d 548 (Tex.Civ.App.1963).

Appellant argues that appellee's cause of action sounded in tort rather than contract and cites us to several cases, one of which is Evans v. Patterson, 269 Ala. 250, 112 So.2d 194.

In the cited case Patterson brought an action against Evans sounding in tort. The evidence showed that Evans was building a highway pursuant to a contract it had with the State of Alabama. A pertinent provision of that contract provided that the contractor shall maintain adequate warning signs and devices to protect the traveling public prior to final acceptance of the project by the State. The highway under construction intersected with an existing highway, and Patterson, while riding as a passenger in an automobile which collided with another automobile at this intersection, was injured as a result of said collision.

The evidence revealed that this intersection was attended with some risk in that the two highways met at the top of a rise,

and vision to the right or left was obscured by trees and there were no signs warning of the intersection, nor stop signs at the place where they came together.

Evans argued that he owed only the common law duty to use due care to keep the highway safe for travel by the public until such time as the State assumed control over it. He further contended that the contract could not be considered as establishing the duty which Evans owed Patterson.

The supreme court said that Patterson was not a party to the contract but only a member of the traveling public at the time of her injury. It concluded that Evans did owe Patterson the common law duty of due care, but that the contract could be looked to for assistance in determining what would be due care under the circumstances.

The supreme court's affirmance of Patterson's judgment on the theory that she had the right to sue the highway contractor for the breach of the common law duty of due care and to the use of the contract to assist her in arriving at what would be due care under the circumstances is not contrary to the decisions in Tennessee Coal, Iron & R. Co. v. Sizemore, *supra*, and Kingsberry Homes Corp. v. Ralston, 285 Ala. 600, 235 So.2d 371.

In *Sizemore* the complaint sounded in contract and the averments proposed plaintiff as a third party beneficiary of a contract entered into by his employer and his union. The contract in several of its provisions set out certain safety measures that were to be taken by the employer for the protection of its employees while working in employer's mines. Sizemore said that he was injured as a result of the breach of this contractual provision.

The employer argued that Sizemore's action should have been in tort rather than contract.

The supreme court said:

"A complaint for the breach of a contract in not performing the obligation

there expressed, or not doing it in the way specified, is not in tort, and cannot be unless the non-performance is by reason of a failure to exercise the care required by law in attempting to perform. If defendant omits to enter upon the duty to perform, however negligent that might be, that is not a negligent performance and not a tort. But if he does undertake to perform, his performance may be negligent, giving rise to a tort. Sloss Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511, 165 So. 764, 109 A.L.R. 385. So that the allegation merely that he breached his contract by failing to install a proper ventilating system, as the contract requires, does not show any negligence or failure to exercise the due care required by legal implication to install such system. *Non constat*, he did exercise due care to do so, but did not accomplish the task for some other reason.

"But even when the complaint shows that the breach of the contract was also a negligent failure to perform a duty which the law imposes by reason of such contract, the injured employee may sue either for the breach of the contract when he is a party to it, or it is made for his direct benefit, or may sue in tort for the breach of the duty imposed by law. Mobile Ins. Co. v. Randall, 74 Ala. 170, 177. So that, if we assume that the facts alleged show a duty on the part of defendant to exercise due care to furnish plaintiff a reasonably safe place to work by reason of his employment, as in effect stipulated in his contract, and that his negligent failure in that regard furnished ground for a tort action, Woodward Iron Co. v. Craig, 256 Ala. 37, 53 So.2d 586; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530, it does not follow that defendant may not also be liable for a breach of its contract to do so.

"Under such circumstances, the injured employee, who is a party to the contract or one for whose direct benefit

it was made, may sue for its breach in assumpsit, or may sue in tort for negligence in failing to perform a duty imposed by law. He has an election in that respect. Lambert v. Jefferson, 251 Ala. 5, 36 So.2d 594; Davis v. Ruple, 222 Ala. 52, 130 So. 772; Adler v. Miller, 218 Ala. 674, 120 So. 153; Knowles v. Dark, 211 Ala. 59, 99 So. 312; Mobile Ins. Co. v. Randall, 74 Ala. 170.

"The contract, as set forth in the complaint in connection with its allegations, shows that it was made in respect to the ventilating system for the direct benefit of a class of which plaintiff was a member, and therefore he may sue for its breach when suffering damages as a third party beneficiary. [Citations omitted.]"

In the *Ralston case* the supreme court said:

"The amended complaint charged, inter alia, that the defendant negligently maintained its loading dock,

" ' * * * in a condition not reasonably safe for the crews of railway freight trains, including the plaintiff, to perform their duties without danger of being caught and injured between a portion of said cars and a portion of said dock, and more particularly the defendant negligently maintained said dock with a clearance between said dock and the overhang of freight cars on said track so inadequate as to be dangerous as aforesaid, * * *.'

"The pertinent portions of the contract, which we have already set out, provided that the owner would ' * * * at all times keep free and clear of any obstruction whatever * * * the space twenty (20) feet in width measured ten (10) feet each way from the center of said track, all structures, facilities or property * * * located or placed * * * parallel with the same to be safely and substantially maintained * * * to preserve said clearances; * * *.' . . .

"We held in Blount Brothers Construction Company v. Rose, 274 Ala. 429, 437, 149 So.2d 821 (1962), that under the provisions of a prime contractor's contract with the government to furnish safety devices for the project, such provisions enure to, and are made for, the benefit of employees of sub-contractors on the project. Such contract, we said, 'imposed the duty on appellant [the contractor] to provide a reasonably safe place for Mr. Rose [employee of the sub-contractor] and his fellow workers to work on this project. Tennessee Coal, Iron and R. Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459; Evans v. Patterson, 269 Ala. 250, 112 So.2d 194.'

"Both in Blount Brothers Construction Company v. Rose, supra, and in Tennessee Coal, Iron and R. Co. v. Sizemore, supra, the contract provisions provided for the safety of employees. We said, in Tennessee Coal, Iron & R. Co. v. Sizemore, supra:

" 'Under such circumstances, the injured employee, who is a party to the contract or one for whose direct benefit it was made, may sue for its breach in assumpsit, or may sue in tort for negligence in failing to perform a duty imposed by law. He has an election in that respect. (Citations omitted.)' .

"Although the contract in the case at bar does not in express terms provide for safety of invitees, nevertheless, we think the jury could consider its provisions as being for the plaintiff's direct benefit. It appears to us that this case is governed by the holdings in *Rose, Sizemore,* and particularly Evans v. Patterson, supra.

"In Evans v. Patterson, supra, there was an action for injuries sustained by a passenger in an automobile which collided with another automobile at an unmarked intersection on a highway undergoing repairs made by defendant-contractor under contract with the State.

The evidence established that the intersection was dangerous and constituted a hazard to the traveling public if not marked. We held that the contract between the defendant-contractor and the State Highway Department was admissible, and could be considered by the jury in determining what would be due care under the circumstances of that case although the common law duty was the only duty owed by defendant to plaintiff.

"It was argued by the defendant-contractor in Evans v. Patterson, supra, that the action being in tort, the defendant owed no duty other than the common law duty to use due care to keep the highway safe for travel until the highway was turned over to the State upon completion of the contract and that 'the contract cannot be looked to to determine the duty * * *.'

"While we did hold that there was only a common law duty to use due care to keep the highway safe for travel until the highway was turned over to the State, we also held that the contract could be considered to determine what would be such due care. In Evans v. Patterson, supra, we quoted with approval from Morgan Hill Paving Company v. Fonville, 222 Ala. 120, 130 So. 807, and said with respect to that case:

" 'In other words, this court held [in *Morgan Hill Paving Co.*, supra] that the defendant could rely on a contract as a predicate for showing a duty to the plaintiff. * * *'

"Thus, we concluded in Evans v. Patterson, supra, that 'with reference to the contract between the state and the contractor * * * the plaintiff was entitled to have the benefit of a duty of due care as indicated by the contract, which, as we have pointed out, includes the placing of warning signals at the intersection here involved.'

"We say here the plaintiff was entitled to have the benefit of a duty of due care as indicated by the contract in this case."

In the *Sizemore case* the action sounded in contract and in *Ralston* the action sounded in tort.

■ The decisive question to be answered, as pointed out by Sizemore, is whether the contract was made for the direct benefit of the plaintiff claiming as a third party beneficiary. If so, he has a choice of suing in contract or in tort. But, if he is not a direct beneficiary but only an incidental beneficiary, he may sue only in tort. He does, however, have the prerogative of using the contract to assist in establishing the measure of care due under the circumstances.

This conclusion is supported by the supreme court's observation in *Evans* that:

". . . [S]he was not a party to the contract but only one of the traveling public which was using the highway at the time of the accident."

This finding in effect says that Patterson was not a direct beneficiary of the contract between Evans and the State but only an incidental beneficiary; consequently she did not have a choice between a contract or tort action.

Having concluded in the case at bar that the contract made between appellant and Hot Mix, Inc. was for appellee's direct benefit, appellee pursuant to *Sizemore* had a choice of actions and the other cited cases do not hold otherwise. We therefore conclude that appellee's complaint stated a cause of action.

Appellant says next that the trial court erred in overruling its demurrer on the principal ground that Hot Mix, Inc., the general contractor on the project in question, had not been made a party defendant.

Appellant submits, in support of its contention, that the contract upon which suit was brought is a joint contract and being

such, Hot Mix, Inc. was a joint obligor or joint contractee and therefore a necessary party to the present action; also that by joining Hot Mix, Inc. in this action the necessity for a subsequent proceeding would be obviated.

■ To begin with, we do not believe that a joint contract is involved in this case. See Road Improvement Dist. No. 1 v. Mobley Constr. Co., 171 Ark. 585, 286 S.W. 878; and Commonwealth v. L. G. Wasson Coal Mining Corp., 358 S.W.2d 347 (Ky.1962). Appellant had a contract with Hot Mix, Inc. to do a part of the construction work on the Interstate 65 project that Hot Mix, Inc. had obligated itself to perform in its contract with the State of Alabama. It is conceded that the provision in the contract between appellant and Hot Mix, Inc. which is the basis of the present action was also in the contract between Hot Mix, Inc. and the State of Alabama. But we have two separate and distinct contracts whereby appellant in its contract undertook to assume the obligation assumed by Hot Mix, Inc. in its contract with the State of Alabama.

In Kraft v. Grider, 221 Ill.App. 467 (1921), the Illinois Court of Appeals had before it a case wherein a subcontractor had an express contract with the general contractor to do certain work on a construction project previously undertaken by the general contractor with the owner; damages resulted from the subcontractor's work and he was sued by a third party; there was a recovery and the subcontractor appealed; the appellate court said:

"Under this contract [one between subcontractor and general contractor] the appellant especially stipulated that the work was to be done according to the plans and specifications from which above excerpts are quoted. This was an express contract whereby the appellant undertook to perform the obligations of the original contractor, and . . . the appellant is bound thereby."

As indicated by the cited case, appellant in the case at bar undertook to perform the obligation of Hot Mix, Inc. to the adjoining landowners who had stock on their property and the appellant would be bound by its promise.

Furthermore, for there to be a joint contract in the instant case, Hot Mix, Inc. and appellant must have made their promises as a unit. Schiffman v. H. L. Raburn & Co., 47 Ala.App. 390, 255 So.2d 332, cert. den. 287 Ala. 741, 255 So.2d 338. But as can be seen from the facts set out in the complaint, the promises were to perform the same act but separately, not jointly.

■ Nevertheless, had we found the contract to be a joint one, Title 7, Section 138, Code of Alabama 1940, as Recompiled 1958, requires that it be construed as joint and several. The effect of such a statute is to permit plaintiff to sue one or all. White v. Blair, 234 Ala. 119, 173 So. 493. In the instant case, appellee chose to sue one defendant, the appellant.

In 67 C.J.S. Parties § 43, p. 965, the following is found:

"In an action on a contract, every person who is subject to the legal liability must be made a defendant; but it is not necessary to join as defendant one who is not a party to the contract and who does not participate in its breach; nor is it necessary to join as defendant one who does not join in the obligation or promise declared on although he also has signed the contract."

We readily admit that Hot Mix, Inc. was a party to the contract with appellant, but appellant is the one that breached the agreement relating to the fences along the right-of-way of the Interstate Highway project, not Hot Mix, Inc.

We, therefore, do not consider Hot Mix, Inc. to be a necessary party to this action and the trial court did not err in overruling the demurrer on this ground.

Appellant also contends that the trial court erred in overruling its motion to strike Count Two of the complaint—the only count that was given to the jury—for that there had been a change in causes of action. The original one count complaint alleged a contract between appellant and the State of Alabama as the basis of its action, whereas in the amended complaint, the contract between appellant and Hot Mix, Inc. was alleged to be the basis of the action.

The answer to appellant's argument is that there was no contract between appellant and the State of Alabama from which a cause of action could arise; therefore the amendment merely permitted the appellee to state a cause of action against the party with whom it had a contract that was purportedly breached, not to change causes of action on separate contracts as was the situation in the cited case of United States Steel Corp. v. McGehee, 262 Ala. 525, 80 So.2d 256. In that case there were three separate and distinct contracts and the court said the amendment claiming a breach of a separate contract from that originally declared on was such a change in the cause of action as to require that it be stricken. But it was also said in Lost Creek Coal & Mineral Land Co. v. Hendon, 215 Ala. 212, 110 So. 308:

" . . . Whether the new count relates to a separate transaction is a question of fact to be determined by the jury or judge sitting as a jury."

No objection was made to the introduction of evidence raising this point nor were written charges requested to be given to the jury pointing out this apparent discrepancy. The jury found for appellee. We find no error in the refusal of the trial court to strike Count Two of the complaint.

The next assignment of error argued by appellant concerns certain questions asked of Dr. Goodman as to the value of his mares before and after their injury. Appellant says the trial court erred in overruling objections to these questions.

The questions are as follows:

"Q. Well, Mr. Patton, we will go at it another way.

"Dr. Goodman, do you have an opinion as to the value of your mare before she got out of this fence and ate this vegetation?

"MR. LEGGE: We object. Incompetent, irrelevant and immaterial.

"MR. PATTON: The mare is not dead.

"THE COURT: Overruled.

"MR. LEGGE: We except.

. . . .

"Q. All right. Now, what in your opinion was the value of the mare after your mare was allowed to get out of the pasture and eat this vegetation that we're talking about?

"MR. LEGGE: We object. Incompetent, irrelevant and immaterial.

"THE COURT: Overruled.

"A. Two thousand dollars.

"MR. LEGGE: We except.

. . . .

"Q. And what was the value of this older mare after she got out of the pasture and ate this vegetation?

"MR. LEGGE: We object. Incompetent, irrelevant and immaterial.

"THE COURT: Overruled.

"MR. LEGGE: We except.

. . . .

"Q. All right. Now, what is your judgment as to the older mare's value after it got out of the pasture and it ate this vegetation?

"MR. LEGGE: We object. Incompetent, irrelevant and immaterial.

"A. Well, my other answer of two thousand dollars was before she got out and her value after was one hundred dollars.

"THE COURT: Overrule your objection.

"MR. LEGGE: We except."

■ In each instance above, the objection made was a general objection. And the rule is that in the face of such an objection, the court cannot be put into error for its ruling unless the evidence sought is patently inadmissible. Parker v. Muse, 47 Ala.App. 84, 250 So.2d 688.

Dr. Goodman, a practicing veterinarian in Limestone County and the owner of the mares, was the only witness to testify concerning the value of the horses. The context in which the value evidence was given shows that the place of injury was in or immediately adjacent to Goodman's pasture in Limestone County. The time of injury was uncertain due to the fact that no one could say with certainty how many days the horses had been out of the pasture, although it is very probable that the animals were not out of the pasture more than two or three days before their absence was discovered.

Also Dr. Goodman testified that the horses were brood mares; that they aborted due to the ingestion of the green vegetation, e. i., corn and soybeans; that the older mare did not conceive afterwards and the younger mare conceived after the abortion but delivered a dead foal and has not been bred since.

Dr. Goodman further testified that no treatment was administered to the two mares except that they were not permitted to eat an excessive amount of protein-laden foods.

■ The general rule as to the measure of damages for injury to livestock is the difference in value of the animals on the day of and prior to injury and the value of the animals on the same day in their restored condition after treatment. Southern Ry. Co. v. Gilmer, 143 Ala. 490, 39 So. 265.

In Miller-Brent Lumber Co. v. Ross, 20 Ala.App. 402, 102 So. 792, cert. den. 212 Ala. 415, 102 So. 793, a question arose as to the admissibility of testimony relating to the measure of damages for an injured hog. The injured hog had been used for breeding purposes and the evidence showed that as a result of the injury was no longer usable for breeding purposes. Witnesses testified as to the value just before the injury and were allowed to say "what was he worth afterwards." The Court of Appeals said there was no error committed by the trial court in overruling objection to said question.

And, in Smith v. Clemmons, 216 Ala. 52, 112 So. 442, a case involving injury to a mare, the supreme court said:

"Plaintiff's question to the witness White, as to what the mare would bring after she was hit, was merely another way of eliciting his competent opinion as to the value of the mare after her injury and was permissible, in connection with the evidence as to her value before the injury, as going to establish the measure of plaintiff's damage."

■ Likewise in the case at bar we consider the questions propounded to Dr. Goodman to be just another way of establishing the value of the mares before and after their injuries. We find no error in the rulings of the trial court admitting such evidence.

Appellant says that the trial court erred in refusing to give a written charge instructing the jury that plaintiff was entitled only to nominal damages for injuries to his horses. This contention if predicated on the assumption that the testimony previously alluded to was erroneously allowed to go to the jury.

We concluded that the testimony as to value was properly admitted, thereby pro-

viding a basis for more than nominal damages; hence the charges relating to nominal damages were properly refused.

Appellant further argues that the trial court's oral charge fails to correctly instruct the jury as to the correct measure of damages in this case.

■ The trial court did include in its oral charge to the jury instructions relating to the proper measure of damages should there be a finding for the plaintiff. Appellant did not except to the oral charge nor ask for an explanatory charge. It did however request that the following written charge be given to the jury:

"23. The Court charges the jury that the measure of damages in this cause is the difference between the reasonable market value of the horses on the day of and before the injury and what would have been their reasonable market value on the same day in their restored condition after treatment, together with the reasonable cost and expense incurred in effecting a cure and reasonable compensation for any loss of service or use by reason of the injury from the time thereof until the cure was effected, not exceeding in all their original value."

This requested written charge was refused and in view of the court's oral charge we think this action proper. The court's oral charge was for all practical purposes in the same language as used by the supreme court in its opinion in Southern Ry. Co. v. Gilmer, *supra*. The written requested charge is also couched in the language of the *Gilmer case*. The oral charge having adequately covered the area of the law sought to be expounded by the requested written charge, no error attends the refusal of said written requested charge.

Appellant concludes by arguing that the overruling of his motion for new trial which was based on a quotient verdict was error.

When the jury returned its verdict to the trial court, the foreman also handed a piece of paper to the trial judge. The judge handed the verdict to the clerk and placed the piece of paper on a table. The paper was introduced into evidence in support of the motion for new trial. The paper contained a column of figures which were added and the total divided by twelve. The sum so obtained by this process was $3,275. The verdict rendered by the jury was $3,500.

■ The question presented by these facts is whether a presumption has been created that the jury rendered a quotient verdict. Such presumption can arise where the data is the work of the jury and the quotient is substantially the same as the verdict. George's Restaurant v. Dukes, 216 Ala. 239, 113 So. 53. It has been said that precise agreement as between the quotient and verdict was not required. Security Mutual Finance Corporation v. Harris, 288 Ala. 369, 261 So.2d 43. Yet a material variance between the quotient and verdict will greatly weaken the inference that a verdict has been arrived at by the quotient process. City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264.

■ In the *Harris case* the amount arrived at by the quotient process was $10,458 and the verdict was $10,500. The difference between the two amounts was $42. The court held that the quotient corresponded substantially to the amount of the verdict and held that a prima facie case had been made of the quotient verdict.

In the case at bar the quotient was $3,275 and the verdict was $3,500, a difference of $225. We consider this difference to be much more than a mere rounding off or a slight addition or subtraction to the quotient amount. In fact, we consider the disparity between the two amounts to be so great as to completely negate the conclusion that the quotient process had been followed in arriving at the verdict. Consequently, we conclude that no error was committed by the trial court in overruling

the motion for new trial on the ground that a quotient verdict had been rendered.

For the reasons discussed above, the judgment of the trial court is affirmed.

Application for rehearing granted.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.