On Application for Rehearing

MOORE, Judge.
The opinion of December 21, 2012, is withdrawn, and the following is substituted therefor.
*332 In the proceedings below, Elizabeth W. Morris filed claims of false imprisonment and assault and battery against her former husband, Matthew D. Morris. After a trial, the Baldwin Circuit Court (“the trial court”) entered a judgment on the jury’s verdict, awarding Elizabeth $75,000 in compensatory damages and $125,000 in punitive damages, for a total damages award of $200,000. Matthew filed a motion for a new trial, pursuant to Rule 59, Ala. R. Civ. P., which the trial court denied. Matthew then appealed the judgment to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6). After this court’s issuance of our opinion on original submission reversing the trial court’s judgment and directing the trial court to grant Matthew’s motion for a new trial, Elizabeth filed an application for rehearing, which was heard orally before this court on June 4, 2013.

Facts

Elizabeth and Matthew were formerly married. After Elizabeth had given birth to two children, the parties separated in early fall of 2006, with Elizabeth and the children remaining in the marital home. On November 17, 2006, Matthew, after telephoning Elizabeth over 20 times, arrived at the marital home late at night, apparently in an attempt to reconcile with Elizabeth. According to Elizabeth, Matthew ended up staying all night, at times snorting Adderall that had been prescribed for Elizabeth.
The next day the parties ate breakfast together and traveled to a local shopping center to purchase clothing for the parties’ children. After Elizabeth dropped off the parties’ older child at her parents’ home for an overnight visit, she returned to the marital home where Matthew remained. In the early morning hours of the next day, Elizabeth hid her Adderall, which, Elizabeth testified, infuriated Matthew. According to Elizabeth, Matthew, while in a rage, placed her in a headlock and struck her repeatedly, causing her to bleed. Af-terwards, when Matthew realized he had “crossed the line,” he told Elizabeth that she would have to do what he said until he could figure out what to do.
Elizabeth testified that Matthew then turned off all the lights, shut the blinds, and ordered Elizabeth to go to the laundry room, where he found a sock and tried to tie it around, or stuff it into, Elizabeth’s mouth. Matthew then had Elizabeth crawl to her bedroom closet, where she began to experience anxiety attacks. Matthew gave Elizabeth some prescribed anxiety medication, but her symptoms did not abate. Matthew then instructed Elizabeth to crawl to the bathroom, where he poured cold water over her in an attempt to curb the panic attack. When Elizabeth continued to suffer, Matthew stated that he would take her to the emergency room. At that point, Matthew stripped Elizabeth of her bloody clothes and put clean clothes on her. He then drove Elizabeth to the emergency room, warning her that if she told anyone what had happened he would kill her and reminding her that he had their daughter.
Elizabeth spent several hours in the emergency room, during which time she did not report, in fact she actually denied, any domestic violence. Matthew picked up Elizabeth upon discharge, and they returned to the marital home. Elizabeth testified that, some time later, she seized an opportunity to grab her cellular telephone while Matthew was not looking and she telephoned her mother, who lived nearby, to ask for help. She then returned to the kitchen, where Matthew was about to snort crushed Adderall, and she blew the drugs off the table. Matthew again became enraged, threw her to the *333 ground, and stomped on her three times, twice on her leg and once on her neck. While she lay on the floor screaming in pain from a broken leg, Matthew walked quickly out the door, passing Elizabeth’s mother and the parties’ son who had just arrived.
Matthew did not deny that he snorted Adderall, but he denied the other aspects of Elizabeth’s account of the events leading up to her injury. As for how Elizabeth hurt her leg, Matthew testified that, while he was in the kitchen, Elizabeth had come up behind him in a rage and they both fell to the floor. According to Matthew, when he tried to pick her up, Elizabeth pulled him down on top of her and began to kick him in the groin, causing him to fall on her. He testified that when he saw Elizabeth’s mother getting out her automobile with an upset look on her face, he left because he did not want to confront her. At that time, according to Matthew, he did not know that Elizabeth had broken her leg, but, he said, he later assumed that the break had occurred when he fell on her.
After leaving the marital home, Matthew drove his vehicle through a red light, striking the automobile of an off-duty corrections officer. He later pleaded guilty to a felony in relation to that accident; he also pleaded guilty to misdemeanor domestic violence for his altercation with Elizabeth.

Evidentiary Issues

Matthew argues that the trial court erred in precluding him from introducing evidence indicating that Elizabeth had falsely accused her own father of raping her, had falsely accused other of her paramours of abusing her, had been convicted of shoplifting on multiple occasions, and had long abused prescription drugs. Matthew argues that all the foregoing evidence tends to prove that Elizabeth lacked credibility and that the jury should have been allowed to consider that evidence when determining whether Elizabeth’s account of the events leading to her injuries was believable. At the outset of the trial, Elizabeth filed a motion in limine seeking to exclude most of the foregoing evidence, pursuant to Rule 403, Ala. R. Evid. (“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”).[1] The trial court conditionally granted the motion.
During the trial, Matthew’s counsel introduced evidence indicating that, during her hospital stay for her anxiety attack, Elizabeth had denied on an admission form that she was in an abusive relationship or that she feared for her physical safety. Elizabeth admitted that she had lied on that form, explaining that she had only been being “compliant” and further clarifying that she had been embarrassed about her situation, having grown up in a home free of domestic violence and having never been in a prior relationship involving domestic violence. Matthew’s counsel then inquired as to whether Elizabeth had ever told anyone that her father had molested her. Elizabeth replied that she had not. When Matthew’s counsel attempted to question her on that point further, Elizabeth’s counsel objected and the trial court ultimately sustained the objection.
Matthew had earlier proffered the testimony of Julia Ogburn, who had stated that, while on a trip to the Bahamas, Elizabeth had confided in Ogburn that Elizabeth’s father had raped Elizabeth, that Ogburn had later confronted Elizabeth’s *334 father and mother about the accusation, and that they had both laughingly denied the accusation, stating that Elizabeth was lying. The trial court also received a proffer that another witness would also testify that Elizabeth had conveyed the same information to him.' Matthew’s counsel argued that the rape accusation was unfounded and that the evidence tended to prove that Elizabeth had'lied in the past about male family members harming her. Matthew’s counsel contended that the jury should assess that evidence when weighing the credibility of Elizabeth’s allegations against Matthew, especially considering that they were the only two witnesses to the event that had led to her broken leg.
In Ex parte Loyd, 580 So.2d 1374 (Ala. 1991), our supreme court ruled that a defendant who had been convicted of sodomy had been prejudiced during his trial by not being permitted to introduce evidence indicating that his alleged victim had falsely accused, or had threatened to falsely accuse, others of sexual misconduct. The supreme court ruled that the proffered evidence, in which the victim admitted that she had falsely alleged sexual misconduct against other men in the past, tended to show the victim’s “manipulative use of false charges and threats of sexual misconduct to achieve her desires.” 580 So.2d at 1376. The court held that the evidence was relevant to whether the defendant had committed the crime of which he was accused or “whether the victim was merely continuing her habit of making threats and false accusations to manipulate persons around her.” Id. In Peeples v. State, 681 So.2d 236, 238 (Ala.1995), our supreme court explained that it had held in Loyd that a victim’s prior allegations of sexual abuse that are demonstrated to be false are generally admissible in criminal actions involving similar allegations.
In this civil action, Elizabeth was not attempting to prove that Matthew had sexually assaulted her, so the evidence of the allegedly false rape allegation against her father was not relevant to whether Matthew had committed the acts of which Elizabeth complained or whether Elizabeth was merely continuing a habit of making false accusations of sexual misconduct. The evidence was more in the nature of an attempt to impeach Elizabeth as to prior bad acts. Rule 608(b), Ala. R. Evid., provides, in pertinent part:
“Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness’s credibility, other than conviction of crime as provided in Rule 609, [Ala. R. Evid.,] may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.”
Matthew was attempting, for the avowed purpose of attacking the credibility of Elizabeth’s domestic-violence allegations against him, to prove that Elizabeth had falsely accused her father of raping her on at least two occasions in the past. Rule 608(b) does not allow that inquiry. See also Gober v. Khalaf, 628 So.2d 416, 417 (Ala.1993) (trial court did not err in excluding testimony of former patient that defendant-physician had committed sexual assault against her because such evidence was impermissible as attempt to impeach physician on a collateral matter in trial in which plaintiff alleged physician had sexually assaulted her). Thus, the trial court did not err in excluding the evidence.
We cannot consider Matthew’s argument regarding the exclusion of any evidence relating to Elizabeth’s alleged past false domestic-violence complaints. The record indicates that the trial court did not absolutely prohibit the introduction of that evidence, but, rather, indicated that the evidence might be admitted upon fur *335 ther consideration during the course of the trial. As our supreme court has explained, Matthew was required to attempt to admit his evidence at trial, subject to the motion in limine, in order to preserve the objection he now raises:
“ ‘In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.’ ”
Bush v. Alabama Farm Bureau Mut. Cas. Ins. Co., 576 So.2d 175, 177 (Ala.1991) (quoting State v. Askew, 455 So.2d 36, 37 (Ala.Civ.App.1984), citing in turn C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala. L.Rev. 1 (1981)). Although Matthew’s counsel several times asserted that Elizabeth had routinely falsely reported her past paramours for domestic violence, Matthew never made a proffer of any evidence to support that allegation. Thus, the issue may not now be raised on appeal.
The trial court granted the motion in limine in regard to Elizabeth’s shoplifting convictions from 2008 and 2009, absolutely prohibiting Matthew from introducing any evidence regarding those convictions. Matthew asserts that, because shoplifting is a crime of moral turpitude and dishonesty, the convictions were admissible to show that Elizabeth was not a credible person. Under Rule 609(a)(2), Ala. R. Evid., evidence that any witness has been convicted of a crime shall be admitted if it “involved dishonesty or false statement,” regardless of the punishment. However, in Maxwell v. State, 387 So.2d 328 (Ala.Crim.App.1980), the Court of Criminal Appeals noted that, depending on the circumstances, shoplifting may or may not be a crime involving dishonesty or false statement and that, under Rule 609,[2] the burden rests on the proponent of the evidence to establish that the crime fell within such classification. Matthew made no attempt to explain the details of Elizabeth’s shoplifting convictions, and, therefore, the trial court properly excluded the evidence. That the trial court may have excluded the evidence for a different reason does not affect the correctness of the ruling. See Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1082 (Ala.2004) (quoting General Motors Corp. v. Stokes Chevrolet, Inc., 885 So.2d 119, 124 (Ala. 2003), quoting in turn Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003)) (“‘This [cjourt may affirm a trial court’s judgment on “any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.” ’ ”).
The trial court also absolutely prohibited Matthew from introducing evidence of Elizabeth’s past illicit drug use. Matthew argues that “[t]he jury was not *336 allowed to hear that Elizabeth had long abused prescription drugs, which helped increase the mental impairment or confusion during the time she made the accusations against [Matthew].” However, Matthew questioned Elizabeth’s medical witnesses at length regarding her use of prescription medication at the time of the incident. In that questioning, Matthew elicited information that Elizabeth’s medications, when used in combination, could alter her perception and recollection of events. In short, the trial court permitted Matthew to introduce evidence- indicating that Elizabeth may have been mentally impaired or confused during the time she made her accusations against Matthew. Thus, Matthew was not prejudiced by the exclusion of further evidence regarding Elizabeth’s past drug abuse. See Rule 45, Ala. R.App. P. (“No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”).
Matthew next argues that the trial court erred in refusing to allow him to testify in his own defense. In her casein-chief, Elizabeth called Matthew as a witness. Matthew’s counsel asked him one question and then reserved the right to call Matthew again during his case-in-chief. However, Matthew was not called as a witness before the trial court determined on the penultimate day of the trial that the parties had “essentially rested” their respective cases, subject to one additional witness being called. On the morning of the last day of the trial, the following exchange took place outside the presence of the jury:
“[MATTHEW’S COUNSEL]: There is a — Matthew Morris wants to testify. ■
“THE COURT: He wants to testify? He’s already testified.
“[ELIZABETH’S COUNSEL]: They done rested.
“THE COURT: He’s already testified:
“[ELIZABETH’S COUNSEL]: They done rested.
“THE COURT: Yeah. Both sides have rested. All I will allow now is rebuttal.
“[ELIZABETH’S COUNSEL]: You can’t reopen the case when we’re getting ready to argue the case. You rested.
“[MATTHEW’S COUNSEL]: I’m just telling you. He told me this morning and just.now again that he wanted to testify.
“THE COURT: No, I’m not going to allow any reopening of the testimony.
“[MATTHEW’S COUNSEL]: Judge, can he testify as rebuttal?
“THE COURT: No, no.”
 In his brief on appeal, Matthew makes a seven-sentence argument in support of reversing the judgment on the ground that the trial court refused to permit him to testify. That argument contains not one citation to authority, although it alleges that Matthew’s due-process rights were violated. As noted above, this court is not required to conduct legal research for a party or to craft an argument on behalf of a party. Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala. Civ.App.1996). Furthermore, it is well settled that the decision whether to reopen a case for further testimony after a party has rested is within the discretion of the trial court. Brooks v. Cox, 285 Ala. 267, 269, 231 So.2d 302, 304 (1970); Moo-neyham v. Herring, 204 Ala. 332, 333, 85 *337 So. 390, 391 (1920) (“But it seems to be well settled that it is not an abuse of discretion for the trial court to refuse to open a case to admit further evidence, where the party, knowing of the evidence and it being available, neglected to offer it in the first instance, and gives no satisfactory excuse for such neglect.”); Ha/rt-selle Real Estate & Ins. Co. v. Atkins, 426 So.2d 451, 452 (Ala.Civ.App.1983) (“To permit the reopening after [a party] ha[s] rested is within the discretion of the court.”). We therefore decline to consider Matthew’s argument on this issue further.
Finally, Matthew maintains that the trial court erred in permitting Elizabeth to introduce the testimony of medical experts that had not been disclosed before trial. Originally, the trial court had granted Matthew’s motion in limine to exclude those experts from testifying as to their diagnosis and treatment of Elizabeth for complex regional pain syndrome, but, during the trial, the trial court allowed their deposition testimony on that point to be read to the jury. Matthew argues generally that he was prejudiced by that evidence and that the trial court exceeded its discretion in allowing it; however, in his brief to this court, Matthew fails to cite any legal authority governing the admissibility of undisclosed expert testimony. A party’s failure to provide a developed legal argument, supported by relevant authority, leaves this court with no issue to review. White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).

Jury Charge

Matthew contends that the trial court erred in charging the jury on punitive damages. The trial court instructed the jury, in pertinent part, as follows:
“Punitive damages are awarded to a plaintiff to punish a defendant for wrongful conduct and to protect the public by deterring or discouraging the Defendant and others from doing the same or similar wrongs in the future .... [The] Plaintiff must have proven by clear and convincing evidence that the Defendant consciously or deliberately acted toward the Plaintiff with oppression, wantonness, or malice.
“Oppression means causing a person to undergo cruel and unjust hardship in knowing disregard of that person’s rights. Wantonness is conduct that is carried on with a reckless or conscious disregard of the rights or safety of others. Malice is the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the person or property of another person or entity or under circumstances that the law will imply an evil intent.”
After the jury retired to the jury room, but before their deliberations began, Matthew’s counsel objected as follows:
‘We take exception to you charging the jury that they can find liability based on a wanton act. The only allegation in the complaint is for an intentional act. Wantonness is not one of the ways to prove this tort.”
The trial court overruled the objection.
In George H. Lanier Memorial Hospital v. Andrews, 809 So.2d 802, 806 (Ala.2001), our supreme court stated:
“Under Alabama law, “‘[a] party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial.” ’ King v. W.A. Brown & Sons, Inc., *338 585 So.2d 10, 12 (Ala.1991) (citation omitted). When an objection to a jury charge has been properly preserved for .review on appeal, as this one was, we ‘ “look to the entirety of the [jury] charge to see if there was reversible error,” ’ and reversal is warranted only if the error is prejudicial. King, 585 So.2d at 12.”
In this case, the only objection preserved for our review is that the trial court erroneously instructed the jury that it could find Matthew liable for assault and battery and false imprisonment based on wanton, as opposed to intentional, conduct. Matthew, however, has not cited any legal authority to support his position that those torts require intentional conduct on the part of the defendant. See Rule 28(a)(10), Ala. R.App. P. Furthermore, Matthew does not attempt to argue that point on appeal; rather, he directs his argument against the award of punitive damages, which argument he did not raise before the trial court. See Rule 51, Ala. R. Civ. P. (“No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before- the jury retires to consider its verdict, stating thé matter objected to and the grounds of the objection.”).
The trial court correctly instructed the jury as to the elements of false imprisonment and assault and battery. The trial court further properly charged the jury that it could not award any damages to Elizabeth unless it was reasonably satisfied that she had proven those elements. Given those instructions, the jury could not have been misled into finding Matthew liable for some lesser or other tortious conduct, which, he complained at trial, was possible. Given that Matthew has not preserved any other objection as to the punitive-damages instruction, we find no basis for reversing the judgment on that ground.

False Imprisonment

Matthew argues that the evidence did not sustain an action for false imprisonment, that the trial court erred in denying his motion for a judgment as a matter of law on that claim, that the trial court erred in instructing the jury as to that claim, and that the judgment should be reversed because the jury’s verdict was based, in part, on the false-imprisonment claim. We disagree.
An appellate court “must review the tendencies of the evidence most favorable to the prevailing party and indulge such inferences as the jury was free to draw.” Cooper v. Peturis, 384 So.2d 1087,1088 (Ala.1980). Additionally,
“[t]he motion for a [renewed judgment as a matter of law] is a procedural device used to challenge the sufficiency of the evidence used to support the jury’s verdict. See[ ] Rule 50(b), [Ala.] R. Civ. P.; Luker v. City of Brantley, 520 So.2d 517 (Ala.1987). Ordinarily, the denial of a [renewed motion for a judgment as a matter of law] is proper where the non-moving party has produced substantial evidence to support each element of [her] claim.”
Cessna Aircraft Co. v. Trzcinski, 682 So.2d 17,19 (Ala.1996) (footnote omitted).
The evidence, when viewed in a light most favorable to the jury’s verdict, shows that, although Elizabeth initially was not restrained by Matthew, after she hid her Adderall, Matthew forcibly compelled her to crawl to the laundry room, where he confined and gagged her. Matthew then ordered Elizabeth to her bedroom closet and the bathroom. Thereafter, Matthew coerced Elizabeth into returning to the marital home from the hospital based on threats of violence toward Elizabeth and *339 their daughter. Once back at the marital home, he again did not allow Elizabeth freedom to leave the premises. She regained her liberty only by surreptitiously telephoning her mother, whose presence motivated Matthew to finally leave.
False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he or she is deprived of his or her personal liberty. See Ala.Code 1975, § 6-5-170. The jury heard sufficient evidence from which it could have found that Matthew unlawfully detained Elizabeth for various periods during which she was deprived of her personal liberty. Therefore, Matthew was not entitled to a judgment as a matter of law as to that claim, the trial court did not err in charging the jury as to that claim, and the jury verdict was not tainted by any award of compensatory or punitive damages based on that claim. Matthew is simply incorrect in asserting that this case falls within the rule set out in Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). See Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1257 (Ala.1998) (holding that, under Aspinwall, “when the trial court submits to the jury a ‘good count’ — one that is supported by the evidence — and a ‘bad count’ — one that is not supported by the evidence — and the jury returns a general verdict, this Court cannot presume that the verdict was returned on the good count. In such a case, a judgment entered upon the verdict must be reversed.”).

Quotient Verdict

Matthew finally complains that the trial court erred in failing to grant him a new trial on the ground that the jury impermissibly rendered a quotient verdict.
Following the trial, Matthew filed a motion requesting that the trial court preserve documents written by the jurors during their deliberations. Acting on that motion, the trial court recovered five different notes from the jury room that it provided to the parties. After reviewing the notes, Matthew supplemented his previously filed motion for a new trial to include the notes. In his motion for a new trial, Matthew argued that the judgment should be set aside “because it is the result of a ... quotient verdict.”[3] A quotient verdict arises when jurors reach an antecedent agreement to award the plaintiff damages equaling or approximating a quotient reached by totaling their individual assessment of damages and dividing that amount by the number of jurors. See Security Mut. Fin. Corp. v. Harris, 288 Ala. 369, 261 So.2d 43 (1972).[4] The trial court held a hearing on the motion for a new trial and denied the motion, evidently determining that Matthew had not proven that the jury returned a quotient verdict.
On appeal, Matthew argues that one of the jury notes, which we refer to as “jury note 1,” indicates that the jury assessed damages by totaling their individual figures and dividing by 11.[5] Jury note 1 contains the following:
*340 “125 [Juror # 1] 100
“150 [Juror # 2] 175
“25 [Juror # 3] 100
“30 [Juror # 4] 100
“30 [Juror # 5] 175
“75 [Juror # 6] 75
“110 [Juror # 7] 100
“175 [Juror # 8] 50
“175 [Juror # 9] 175
“30 [Juror # 10] 50
“175 [Juror # 11] 175”
According to Matthew, the figures in the left-hand column average 100, shorthand for $100,000 in compensatory damages, and the figures in the right-hand column average 115.90, shorthand for $115,000 in punitive damages. Matthew argues that jury note 1 indicates that the jury “clear[ly] ... adjusted” the compensatory-damages award of $100,000 downward to $75,000 and, also just as obviously, adjusted the punitive-damages award upward from $115,000 to $125,000. According to Matthew, as a result, the jury reached a verdict totaling $200,000, which approximates the original determination of $215,000.
Matthew points out that, under Alabama law, a presumption arises that a jury used the quotient process to obtain a verdict “where data found in the jury room, and appearing to be the work of the jury, produces a quotient substantially the same as the verdict rendered.” Harris, 288 Ala. at 372, 261 So.2d at 45-46.
“[A] quotient verdict is invalid even if the amount of the verdict is not exactly the same as the quotient obtained by the jury, but is reached by rounding off the quotient to an even number or by making some other slight addition or subtraction.”
Harris, 288 Ala. at 372, 261 So.2d at 45 (citing International Agrie. Corp. v. Aber-crombie, 184 Ala. 244, 63 So. 549 (1913), and George’s Rest. v. Dukes, 216 Ala. 239, 113 So. 53 (1927)). Matthew contends that jury note 1 raises a presumption that the jury rendered an invalid quotient verdict that, he says, Elizabeth failed to rebut because she did not present any juror affidavits or other evidence to prove that, in fact, the jury had not agreed beforehand to be bound by their quotient.
In rejecting that argument, the trial court decided either (1) that Matthew did not present sufficient evidence to raise the presumption that the jury rendered a quotient verdict or (2) that Elizabeth had rebutted that presumption. On appeal, this court must presume that the trial court correctly denied the new-trial motion, and we may reverse only if the record shows that the trial court clearly committed legal error prejudicial to Matthew’s rights. See Ford Motor Co. v. Duckett, 70 So.3d 1177, 1181 (Ala.2011).
Assuming that jury note 1 reflects an averaging of the jurors’ individual damages assessments, or the use of the quotient process, it remains that the trial court reasonably could have concluded that the ultimate verdict did not substantially approximate the quotient. Matthew essentially argues that the jury reached a quotient for compensatory damages and reduced it by $25,000, and then reached a quotient for punitive damages and increased it by $10,000. He also maintains that those “adjustments” produced an aggregate award of $15,000 less than the total quotient in jury note 1. Given such large deviations, the trial court reasonably could have decided that the verdict materially varied from the quotient. Although Alabama cases recognize that a quotient verdict may still be presumed despite a minor deviation between the quotient and the verdict, see Harris, 288 Ala. at 378, 261 So.2d at 46, no Alabama case has ever considered discrepancies as large as $10,000 and $25,000 to indicate mere mathematical adjustments, or “rounding off,” to an agreed-upon quotient, even in relation *341 to a $200,000 verdict.[6] Compare Burgreen Contracting Co. v. Goodman, 55 Ala.App. 209, 222, 314 So.2d 284, 295 (Civ.App.1975) (holding that discrepancy of only $225 between a quotient of $3,275 and a verdict of $3,500 was “so great as to completely negate the conclusion that the quotient process had been followed in arriving at the verdict”). “[A] material variance between the quotient and verdict will greatly weaken the inference that a verdict has been arrived at by the quotient process.” Id. (citing City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264 (1939)). Hence, the trial court did not exceed its discretion to the extent it concluded that the inference of a quotient verdict was weakened by the large variations between the quotients in jury note 1 and the damages actually awarded by the jury.
Moreover, in deciding whether the jury reached a quotient verdict, the trial court did not limit its inquiry solely to a consideration of the probative value of jury note 1. The trial court also considered at least one other jury note, which we refer to as “jury note 4.” That jury note contains the following column:
“220
“20Q
o LO t — 1
o LO tH
o (NJ 03
o 03 03
o 03 03
“220
“220
“220
“150
“150”
To the left of that column, the following appears:
“$220
“$215
“$⅛9⅞
“$200”
Assuming those figures indicate the overall dollar amount the jury was considering awarding, the quotient was either $192,727 or $194,545,[7] both of which differ substantially from the figures in jury note 1, including the total of $215,000 from that note.
Based solely on the differing contents of jury note 1 and jury note 4, the trial court reasonably could have found that the jury did not predetermine to bind themselves to render a verdict based on a quotient. Rather, because those two notes contain several columns with varying numbers and averages, the trial court could have concluded that the jury necessarily continued to debate after obtaining any figure it reached via a quotient. After all, the jury would not have had two different computations if it had previously agreed to be bound by whatever quotient was reached the first time. “If, after obtaining the quotient, the jurors continue to deliberate and thereafter arrive at a different *342 amount of damages, the verdict will not be considered a quotient verdict and will be sustained, absent some other infirmity.” Warner v. Elliot, 573 So.2d 275, 277 (Ala. 1990) (citing Western Union Tel. Co. v. Hill, 163 Ala. 18, 37, 50 So. 248, 254 (1909)). “[I]t is permissible for jurors to use the quotient process for the purpose of obtaining a figure that represents an average of the amounts the individual jurors feel should be awarded and that serves merely as a suggestion or basis for further discussion, deliberation, or consideration.” Id. (citing Fleming v. Knowles, 272 Ala. 271, 277-78, 130 So.2d 326, 332 (1961)).
None of the cases cited by Matthew in his appellate brief contain two differing computations. The existence of competing computations constitutes an additional factor the trial court reasonably could have considered as negating any inference that the jury impermissibly agreed to bind themselves to a quotient verdict. When coupled with the large variation between the quotients upon which Matthew relies and the damages awarded, we cannot agree that the trial court exceeded its discretion to the extent it found that Elizabeth had rebutted any presumption that the jury rendered a quotient verdict.
“[T]here is a strong presumption that jury verdicts are correct, and ordinarily judgments based on verdicts will not be set aside unless they are shown to be plainly erroneous or manifestly unjust,” Warner v. Elliot, 573 So.2d at 277 (citing Bussey v. John Deere Co., 531 So.2d 860, 861 (Ala.1988)), and the presumption of correctness attending a jury’s verdict is strengthened by the trial court’s denial of a motion for a new trial. Id. Because the trial court reasonably could have concluded from the evidence in the record that the jury did not render a quotient verdict, we find no basis for concluding that its judgment was plainly erroneous or manifestly unjust so that it should be reversed.
APPLICATION GRANTED; OPINION OF DECEMBER 21, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
DONALDSON, J., concurs specially.
THOMAS, J., dissents, with writing.

. Elizabeth also moved to exclude, under Rule 609, Ala. R. Evid., any evidence of any conviction for shoplifting that was over two years old.

. Maxwell discussed federal Rule 609, which is identical in all respects to the current Alabama rule.

. Matthew based his motion for a new trial on statements and affidavits from jurors; however, Matthew concedes on appeal that the juror statements and affidavits were inadmissible to prove the existence of a quotient verdict. See Rule 606(b), Ala. R. Evid. (generally prohibiting introduction of juror statements or affidavits impeaching a verdict).

. Such agreements amount to illegal gambling verdicts in that they induce jurors to either inflate or deflate their individual assessments in order to control the average to be returned as the verdict. See Ewart v. Cunningham, 219 Ala. 399, 402, 122 So. 359, 362 (1929).

.The trial court excused one of the jurors during the trial, resulting in a jury of only 11 members.

. In Kimball v. Walden, 171 W.Va. 579, 583, 301 S.E.2d 210, 215 (1983), the Supreme Court of Appeals of West Virginia observed that Alabama is the only jurisdiction where "evidence of papers showing that the jury used the quotient process at some point in their deliberations and returned a verdict in that amount give[s] rise to a presumption that there was an advance agreement to return an improper quotient verdict.” In other jurisdictions, that evidence "is not sufficient, of itself, to establish an antecedent agreement of the jurors to be bound by the result of the computation.” Id. That observation further bolsters our belief that we should require substantial similarity between the quotient and the verdict in cases in which only papers recovered from the jury room support the assertion that a quotient verdict was reached.

. The quotient depends on whether the first figure used was 200 or 220.